UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
BARRY C. HONIG, et al.,                                        :
                                                               :
                              Plaintiffs,                      :
      v.                                                       :  20 Civ. 5872 (AKH)
                                                               :
JOHN DAVID HANSEN and GREGORY P.                               :
HANSON,                                                        :
                                                               :
                              Defendants.                      :
-------------------------------------------------------------- X
                                                               :
GRANDER HOLDINGS, INC., et al.,                                :
                                                               :
                              Plaintiffs,                      :  20 Civ. 8618 (AKH)
      v.                                                       :
                                                               :
JOHN DAVID HANSEN and GREGORY P.                               :  **AMENDED ORDER GRANTING**
HANSON,                                                        :  **MOTION TO DISMISS**
                                                               :
                              Defendants.                      :
                                                               :
-------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        This Order amends the Order Granting Motion to Dismiss filed October 6, 2021. ECF No. 41. The Court neglected to grant judgment to the defendants in the first Order. This Amended Order corrects that omission.

        Defendants John David Hansen ("Hansen") and Gregory Hanson ("Hanson") move to dismiss two complaints in related actions 20cv5872 and 20cv8618, for failure to state a claim upon which relief can be granted. ECF Nos. 57, 91. Additionally, Plaintiffs Barry C. Honig, GRQ Consultants, Inc., GRQ Consultants, Inc. 401K, GRQ Consultants, Inc. Roth 401K FBO Barry Honig, GRQ Consultants, Inc. Roth 401K FBO Renee Honig, HS Contrarian Investments, LLC, Robert S. Colman, and Robert S. Colman Trust UDT 3/13/85 (the "Honig

Plaintiffs") as well as Plaintiffs Grander Holdings, Inc., Grander Holdings, Inc. 401K PSP, Brauser Family Trust 2008, Michael Brauser, Daniel Brauser, Benjamin Brauser, Gregory Brauser, and Joshua Brauser (the "Grander Plaintiffs") each move to strike information contained within the Defendants' motion as improper evidence outside of the scope of a 12(b)(6) motion. ECF Nos. 81, 97. Defendants' motions to dismiss the complaints are granted, and Plaintiffs' motions to strike are denied.

## BACKGROUND

Defendants are Hansen and Hanson are the Chief Executive Officer and Chief Financial Officer, respectively, of MabVax Therapeutics, Inc, ("MabVax") a "clinical-stage biotechnology company focused on the development of antibody-based products and vaccines to address unmet medical needs in the treatment of cancer." Honig Third Amended Complaint ("TAC") ¶ 24, ECF No 112. Plaintiffs are private investors who purchased shares of MabVax common and preferred stock and warrants. *Id.* ¶¶ 15-19. In 2015-2018, MabVax's HuMab-5B1 antibody, described as its "lead antibody development program," was undergoing Phase 1 of its clinical trials. Grander Fourth Amended Complaint ("FAC") ¶¶ 30-35, ECF No 39. The two groups of Plaintiffs allege that Defendants made misrepresentations and omissions during the 2016-2018 time period, which induced Plaintiffs to make additional investments in the company. *See* Honig TAC ¶¶ 52, 70, 78. The stock purchases at issue were made directly from MabVax, in private placement transactions. *See id.* ¶¶ 52-53, 57, 70, 78, 86-87, and 114-115. The Honig Plaintiffs' purchases, in the aggregate, totaled over $5.6 million. Honig TAC ¶¶ 52, 70, and 78. The Grander Plaintiffs invested, in the aggregate, over $3,100,000. Grander FAC ¶ 22.

Plaintiffs allege that Defendants made multiple material misrepresentations and omissions, including the following:

- **The Adverse Event:** Plaintiffs allege that Defendants repeatedly promised that MabVax's antibody clinical trial was seeing promising results, while intentionally failing to disclose the problematic results. Specifically, Defendants failed to disclose that due to an "adverse event", enrollment in certain clinical trials had been suspended as of February 12, 2018. Honig TAC ¶ 132. Defendants disclosed in October 2018 that patient enrollment had been suspended but did not provide the date on which the suspension when into effect.
- **The Oxford Loan:** MabVax entered into a senior secured debt financing agreement with Oxford Finance LLC (the "Oxford Loan"). Under the terms, Oxford would loan MabVax an initial $5 million, and later provide a second tranche of $5 million if MabVax's antibody trial showed positive results. Defendants allegedly made statements that they could "certainly" pull the second tranche, that it was a "sure thing." Grander FAC ¶¶ 53, 61. However, when MabVax allegedly failed to produce positive results, Oxford allegedly refused MabVax's request for the second $5 million tranche. Rather than tell Plaintiffs and other investors that Oxford had rejected MabVax's request for the second tranche, Defendants simply told investors that the timeline for the second Oxford loan had "expired" and they were not seeking further funding from Oxford. Ultimately, MabVax's clinical trial did not progress to a Phase 2 trial, and the company never developed a marketable product or generated material revenues. Honig TAC ¶¶ 3, 5, 43.
- **Defendants' Compensation Reduction:** Plaintiffs allege that in order to continue receiving "staggeringly high" compensation packages, Defendants continually induced investors to fund the Company's operations. *See* Honig TAC ¶ 3. In April 2017, to induce another $1.15 million of investment from Plaintiffs, Hansen and Hanson promised to take pay cuts and signed letter agreements to that effect, but reneged shortly thereafter, and extended their compensation packages on "nearly identical terms" to their previous package. Honig TAC ¶¶ 69, 72-74, 77, 79-80.
- **SEC Investigation:** Plaintiffs also allege that in 2018, Defendants disclosed the existence of an SEC investigation, but initially failed to disclose that they themselves were potential subjects. Plaintiffs further allege that Defendants failed to disclose that the SEC was also investigating certain shareholders, including Plaintiff Barry Honig, Grander Holdings, and M. Brauser. Defendants allegedly solicited Honig and the Plaintiffs to invest in MabVax while participating in and cooperating with the SEC's investigation of Honig's disclosures. Defendants only disclosed the nature of the SEC's investigation after they received further investments from Honig and the Plaintiffs. Honig TAC ¶ 6.
- **Registration Rights:** Defendants allegedly promised that Plaintiff would be given registration rights to induce further investment. MabVax was obligated by its agreement with Plaintiffs "to prepare and file with the [SEC] a registration statement covering the Registrable Securities for an offering to be made on a continuous basis pursuant to Rule 415," however, Plaintiffs allege that when Hanson provided such agreements to Plaintiffs, he knew or should have known that the SEC would not permit the required registrations for the foreseeable futures because of the ongoing investigation into MabVax, the Defendants, and

MabVax's shareholders. On May 21, 2018, thirteen days after receiving the further funding from Plaintiffs, Defendants caused MabVax to file an 8-K which stated that "We do not believe that the SEC would declare effective any registration statements registering our securities effective during the pendency of the SEC Investigation." Grander FAC ¶ 148. On November 20, 2018, Defendants filed a Form S-1 registration statement that provided: "The SEC has informed the Company that it will not declare certain registration statements previously filed effective during the pendency of the SEC Action." Grander FAC ¶ 150.

On July 28, 2020, the Honig Plaintiffs filed the instant suit, and on September 16, 2021, filed the Third Amended Complaint ("Honig TAC"), alleging violations of Sections 25400(d) and 25500 of the California Corporations Code (Count I); Violations of Sections 25401, 25501, 25504, and 25504.1 (Count II); Fraudulent Inducement (Count III); Common Law Fraud (Count IV); Common Law Negligent Misrepresentation (Count V); and Tortious Interference with Contract (Count VII). *See* 20-cv-5872, ECF No. 112. On September 20, 2021, the Grander Plaintiffs filed their separate Fourth Amended Complaint, asserting identical claims to the Honig TAC, except for tortious interference of contract. *See* 20-cv-8618, ECF No. 39. Defendants now move to dismiss both the Honig Third Amended Complaint and the Grander Fourth Amended Complaint. *See* Honig Mot. Dismiss, 20-cv-5872, ECF Nos. 57, 91. Plaintiffs additionally move to strike certain references and exhibits to Defendants' motions to dismiss as outside the scope of a 12(b)(6) motion. *See* ECF Nos. 81, 97.

## DISCUSSION

I.  **Plaintiffs' Motions to Strike**

The Honig Plaintiffs move to strike exhibits A, B, C, H, I, J, K, M, and N to the French Declaration, ECF No. 59, (the "Disputed Exhibits") in their entirety, pages 1-3 of the Honig Motion to Dismiss, ECF No. 58, and sentences contained in the Motion to Dismiss on pages 4-6, 8-10, 25, and 48 referencing the content of Exhibits A, B, C, H, I, J, K, M, and N

(collectively, the "Honig Disputed Materials"). Similarly, the Grander Plaintiffs seek to strike Exhibits A, B, C, H, I, J, K, S, T, and U to the French Declaration, ECF No. 93, the reference to the Honig Motion to Dismiss, and all sentences referencing French Declaration Exhibits A, B, C, H, I, J, K, S, T, and U on pages 5-8 of the Grander Motion to Dismiss (collectively, the "Grander Disputed Materials"). Plaintiffs argue that Defendants' motions to dismiss includes a host of facts and references to information which were not included in the complaint or its exhibits, and as such, seek to strike references to those extraneous materials.

I hold that Plaintiffs' motions to strike the contents of the motion to dismiss are improper. Under Fed. R. Civ. P 12(f), the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, Fed. R. Civ. P. 7 excludes motions from the definition of pleadings, and courts in this district have held that Rule 12(f) does not authorize this court to strike documents other than pleadings. *Sierra v. United States*, 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998); *see also Burns v. Bank of Am.*, 2007 WL 1589437, at *11 (S.D.N.Y. June 4, 2007) ("[T]he reply brief and accompanying materials of which the plaintiffs complain is not a pleading, and thus is not properly the subject of a motion under Rule 12(f)."); *Latino Quimica- Amtex S.A. v. Akzo Nobal Chems. B.V.*, 2005 WL 2207017, at *10 n.6 (S.D.N.Y. Sept. 8, 2005) (denying motion to strike an opposition brief because the motion "[wa]s directed to a brief rather than a pleading"). Plaintiffs' motions are therefore denied.

## II.    Motion to Dismiss

Turning to the motions to dismiss, Defendants make several arguments for the dismissal of the claims. Defendants first argue that Plaintiffs' California claims should be dismissed as time-barred. Defendants next argue that the Plaintiffs have not pleaded a material

misrepresentation or omission, reliance, scienter, or loss causation. Finally, Defendants argue that Plaintiffs' claim under Sections 25401, 25501, 25504, and 25504.1 should be dismissed for failure to plead privity, sufficient contacts, or a special relationship between the parties. These issues are addressed in turn.

    a. Legal Standard

To survive a motion to dismiss, the Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court need not accept mere conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Gissin v. Endres*, 739 F. Supp. 2d 488, 499 (S.D.N.Y. 2010). Because all of Plaintiffs' claims sound in fraud, including the tortious interference of contract claim, they are subject to Rule 9(b)'s heightened pleading standard. *See Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009) (holding that a claim sounds in fraud when it "relies on the same factual allegations that served as a basis for [the fraud-based] claim"); *see Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 251-52 (S.D.N.Y. 2008) (fraudulent inducement claim is subject to Rule 9(b)); *Siegal v. Gamble*, 2016 WL 1085787, at *6 (N.D. Cal. Mar. 21, 2016) ("Because [Plaintiff] has asserted [that Defendants] violated California's securities laws when they made false statements and withheld material information, the claim sounds in fraud and must comply with Rule 9(b)."); *B & M Linen v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481-84 (S.D.N.Y. 2010) (fraud and negligent misrepresentation subject to Rule 9(b)). Plaintiffs concede that Rule 9 applies, but dispute whether the Private Securities Litigation Reform Act ("PSLRA") pleading requirements apply when evaluating claims under the California Corporations Code. "[F]ederal cases construing federal securities laws, including pleading requirements, are persuasive authority when interpreting [California] law." *Irving Firemen's Relief & Ret. Fund v.*

*Uber Techs.*, 398 F. Supp. 3d 549, 553 n.2 (N.D. Cal. 2019); *see Kamen v. Lindly*, 114 Cal. Rptr. 2d 127, 132 (Cal. Ct. App. 2001) ("Where, as here, California law is modeled on federal laws, federal decisions interpreting substantially identical statutes are unusually strong persuasive precedent."). "The particularity requirement of the PSLRA is largely the same as Rule 9(b), except when 'plaintiffs allege, on information and belief, that defendants made material misstatements or omissions,' in which case, 'the complaint must state with particularity all facts on which that belief is formed.'" *In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 184 (S.D.N.Y. 2003); *See In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 391-92 (S.D.N.Y. 2006).

Under Rule 9(b), Plaintiffs must state with particularity "the circumstances constituting fraud" or mistake. *SEC v. Lyon*, 529 F. Supp. 2d 444, 449 (S.D.N.Y. 2008). And "when pleading scienter as part of a fraud claim," the Plaintiffs must "allege facts that give rise to a strong inference of fraudulent intent." *Wurtsbaugh v. Banc of Am. Sec. LLC*, 2006 WL 1683416, at *4 (S.D.N.Y. June 20, 2006); *see also ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (Plaintiffs must plead "with particularity facts giving rise to a strong inference that the defendant acted with . . . an intent to deceive, manipulate, or defraud.").

    b. Statute of Limitations

Defendants argue that the Plaintiffs' California Corporation Code Claims are time barred as to the registration rights, the Oxford Loan, and the Defendants' pay cut issues. The California Corporations Code's two-year statute of limitations, begins to run when a reasonable investor "becomes aware of financial, legal, or other registration information that suggests . . .

that he or she had been defrauded." *Wright v. Bloom*, 2012 WL 6000960, at *3-4 (N.D. Cal. Nov. 30, 2012).

I hold that the California claims are time-barred as they relate to the registration rights and pay cuts, but not as to the Oxford Loan. Plaintiffs allege that MabVax disclosed on May 21, 2018, that it did "not believe that the SEC would declare effective any registration statements . . . during the pendency of the SEC Investigation." Grander FAC ¶ 148; Honig TAC ¶ 97. Therefore, Plaintiffs were put on notice as of May 2018 that they may have been defrauded by Defendants and would have needed to file their claims by May 2020. *Cf. Schiro v. Cemex, S.A.B. de C.V.*, 438 F. Supp. 3d 194, 200-02 (S.D.N.Y. 2020) (holding that statute of limitations for federal securities fraud claim began when defendants publicly disclosed the alleged omitted information). Similarly, Plaintiffs allege that they knew as early as July 3, 2017, that Defendants did not take a pay cut, and no later than April 2, 2018, when a 10-K detailing Defendants' salary was filed. *See* Honig TAC ¶¶ 72-74; Grander FAC ¶¶ 93-96. These filings and statements would have put a reasonable investor on notice that Defendants made a material misrepresentation. Because the Honig Plaintiffs and Grander Plaintiffs did not file suit until July and October 2020 respectively, their California claims as to the registration rights and pay cuts are time-barred.

However, I hold that Plaintiffs' claims are not time-barred as to the Oxford Loan. Plaintiffs allege that they were made aware of the Oxford rejection in December 2019 (for the Honig Plaintiffs) and the end of 2018 (for the Grander Plaintiffs). Defendants argue that Plaintiffs should have known "long before" July 28, 2018, that MabVax had failed to satisfy the "positive interim data" condition, since they were "eagerly await[ing] news [of] Oxford's decision regarding whether to provide the second tranche." Grander FAC ¶ 47; Honig TAC ¶

39. Defendants claim that Plaintiffs should have been on notice of the failure to meet the Oxford Loan conditions as of the 10-Q filing on November 7, 2016, which stated that the Oxford option had expired and that MabVax was not pursuing additional funding with Oxford.  Grander FAC ¶ 66; Honig TAC ¶ 48.  While Plaintiffs might have been able deduce that MabVax did not meet the second condition to get the Oxford Loan, the statements were not clear enough to suggest to a reasonable investor that they were being defrauded. Therefore, Plaintiffs' claims under California Corporation Code are dismissed as time-barred only to the extent that they refer to the issue of registration rights and pay cuts.

        c. Common Law Fraud and Fraudulent Inducement; Negligent Misrepresentation; Tortious Interference

Defendants argue that Plaintiffs have failed to plead a material misrepresentation or omission, reliance, scienter, or loss causation.  A claim for common law fraud or fraudulent inducement in New York requires that Plaintiffs allege (i) that a Defendant made a material misrepresentation or omission; (ii) with scienter; (iii) transaction causation; and (iv) loss causation.  *See Tsinias Enters. Ltd. v. Taza Grocery*, 101 N.Y.S.3d 138, 140 (N.Y. App. Div. 2019); *see also Basis PAC-Rim Opportunity Fund (Master) v. TCW Asset Mgmt. Co.*, 48 N.Y.S.3d 654, 654 (N.Y. App. Div. 2017); *Loreley Fin. (Jersey) No. 4 Ltd. v. UBS Ltd.*, 978 N.Y.S.2d 615, 619-20 (N.Y. Sup. Ct. 2013). If a fraud claim relies on the same alleged misrepresentations as a fraudulent inducement claim, then the fraud claim should be dismissed as duplicative. *CVI Invs., Inc. v. Mariano*, 2019 WL 7067089, at *5 (S.D.N.Y. Dec. 20, 2019).  A claim for negligent misrepresentation requires that Plaintiffs allege (i) that a Defendant had a duty, as a result of a special relationship, to give correct information to Plaintiffs; (ii) the Defendant made a material misrepresentation or omission; (iii) that Defendant knew or should

have known was incorrect; (iv) the Defendant knew the information was desired by Plaintiffs for a serious purpose; (v) transaction causation; and (vi) loss causation. *DeBlasio v. Merrill Lynch & Co.*, 2009 WL 2242605, at *32 (S.D.N.Y. July 27, 2009) ("Negligent misrepresentation involves most of the same elements as fraud, with a negligence standard substituted for the scienter requirement."). Finally, Plaintiffs' claim for tortious interference with contract requires "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006).

　　　　　　　　i.　Material Misstatement or Omission

In determining whether a statement was misleading, the court must take a defendant's statement at face value. *See Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*, 114 F. Supp. 3d 633, 650 (N.D. Ill. 2015). Statements that "affirmatively create an impression of a state of affairs that differ in a material way from the one that actually exists," are considered to be misleading, *see Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002), as are statements that are "necessarily inconsistent with the truth," *Sinay v. CNOOC Ltd.,* 2013 WL 1890291, at *10 n.15 (S.D.N.Y. May 6, 2013). Statements that "vaguely and enthusiastically" describe a company's performance and "expectations of business success" are considered to be inactionable puffery. *See Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 569 (S.D.N.Y. 2018) *aff'd sub nom. Ark. Pub. Emps. Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019), *see also Matsumura v. Benihana Nat. Corp.,* 542 F. Supp. 2d 245, 252-53 (S.D.N.Y. 2008) (holding that for fraud claims, "predictive or opinion statements about future events, without more, are not misrepresentations"). A

misstatement or omission must also be material. Materiality is "an objective standard," *Amgen v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). In determining whether a statement is material, courts consider whether a fact would "have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 38 (2011).

I hold that Plaintiffs failed to allege a material misstatement or omission regarding the SEC investigation. As to MabVax's January 30, 2018 Form 8-K, the company disclosed that MabVax "received notice that the Securities and Exchange Commission ('SEC') was conducting an investigation and examination pursuant to Section 8(e) of the Securities Act of 1933, as amended relating to certain of the Company's registration statements (and amendments thereto)" and that "[t]he Company intends to cooperate fully with the SEC's examination." Honig TAC ¶ 104; Grander FAC ¶¶ 112-113. Plaintiffs allege that the MabVax's press release was materially misleading because it omitted that Defendants would cooperate with the SEC investigation, and that certain shareholders such as Honig, Grander, and M. Brauser were subjects under investigation. Grander FAC ¶¶ 110, 114, 116, 121, 124, 126, 128. The Grander FAC alleges that the "press release created an impression, generally, that the SEC [was] investigating acts related to registration statements MabVax had filed and amendments thereto—and nothing more." Grander FAC ¶ 115.

The press release alerted investors to the existence of an SEC investigation into the company and stated that the "Company intends to cooperate fully with the SEC's examination." While the Plaintiffs who were under investigation would subjectively have altered their decision to invest, the inclusion of such information would not have significantly

altered the total mix of information for a reasonable investor who is evaluating an investment in MabVax.  Moreover, it should have been obvious to Plaintiffs that they might be implicated in an investigation into MabVax's registration statements, as their business dealings consisted of large investments which involved share registration.  Grander FAC ¶ 71; *see World Series of Casino Gambling v. King,* 1986 WL 12525, at *4 (holding that defendant was not required to disclose the subject of an investigation where it should have been obvious to the plaintiffs that they would be subjects of the investigation based on their business dealings with the defendant).  Therefore, I hold that there was no material misrepresentation or omission as to the SEC investigation.

        I also hold that Plaintiffs have not pleaded any material misstatement relating to the registration rights.  Plaintiffs allege that Defendants promised to grant the Plaintiffs registration rights, when they had no intentions of doing so. Contrary to Plaintiffs' allegations, the agreements only require that MabVax use "reasonable best efforts" to register the Grander Plaintiffs' shares. *See* Ex. E at 72; *see Rapoport v. Asia Elecs. Holding Co*., 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (if the documents that form the basis of a plaintiff's claim "contradict the allegations of the [] complaint, the documents control and [the] Court need not accept as true the allegations in the [] complaint").  The Grander Plaintiffs also allege that Defendants "represented" that MabVax would provide for registration rights, but do not provide any further information on this representation, such as what specifically was said, or any terms of that promise. See Grander FAC ¶ 149.  Plaintiffs merely indicate that Hanson e-mailed M. Brauser on April 27, 2018, and touted the existence of registration rights. Id. ¶ 140.  This conclusory allegation does not provide any factual support for what specifically was "touted".

However, I hold that Plaintiff has pleaded sufficient information to constitute a material omission. Plaintiffs argue that Defendants' statements regarding the Oxford Loan contained material omissions, namely, that Oxford had rejected Plaintiffs' request for the second tranche. Defendants note that Plaintiffs make contradictory allegations within their complaints, stating that the request was denied for insufficient data, and in other places, that the request was denied because the Phase 1 results were not positive. *Compare* Grander FAC ¶¶ 68 *with id.* ¶ *81*. Regardless of the reason that the request was denied, simply explaining that the option for the second tranche "expired" does not convey important information about the viability of the trial. Rather, it creates an impression of a state of the clinical trials that "differ[s] in a material way from the one that actually exists." *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Additionally, the fact that Oxford denied MabVax's request for a second tranche, and the reason for such a denial would significantly alter the total mix of information about MabVax to a reasonable investor, who might assume that the option "expired" due to inaction, among other reasons. A reasonable investor might seriously reconsider investing in a company if they knew that the data was not positive, or that a renowned company declined to provide further funding because there was insufficient data from the Phase 1 trials. Therefore, Plaintiff has sufficiently alleged that the statements regarding the Oxford Loan was a material misstatement.

I also hold that Plaintiffs have satisfied their burden at the pleading stage regarding the omission of information about the suspension of patient enrollment. Plaintiffs allege that MabVax's disclosures on February 6, April 2, and May 3, 2018, about its Phase 1 trial were materially misleading because they omitted that patient enrollment had been suspended as of February 12, 2018. *See* Honig TAC ¶¶ 127-132, Grander FAC ¶¶ 153- 168. Defendants

dispute that the trial was suspended on that date and argue that Plaintiffs allege no facts to supporting that claim. They further argue that the information in the disclosures does not state that the enrollment was suspended in February. Finally, they argue that Plaintiff has failed to allege facts indicating that Defendants knew the suspension had taken place.

Defendants' arguments are unavailing. Plaintiffs' factual allegations that the trial was suspended in February are taken as true at this stage, and the allegations that the disclosures repeatedly discussed continued enrollment does not contradict Plaintiffs' claims; it merely shows that Defendants omitted material information. Additionally, the complaints acknowledge that Defendants were involved in the day-to-day operations of MabVax, included the drafting and release of the disclosures. Grander FAC ¶¶ 15-16, 203. As such, Plaintiffs have sufficiently alleged material misstatements and omissions related to the Oxford Loan and the trial enrollment.

      ii. Loss Causation

While Plaintiffs have plausibly alleged material misstatements related to the Oxford Loan and the Phase 1 trial enrollment, Plaintiffs have failed to plead loss causation. Plaintiffs must allege that Defendants' conduct "directly caused the loss about which [Plaintiffs] complain[]." *Loreley Fin. (Jersey) No. 4 Ltd. v. UBS Ltd.*, 978 N.Y.S.2d 615, 619-21 (N.Y. Sup. 2013) (alleging common law fraud); *see Basis PAC- Rim*, 48 N.Y.S.3d at 654 (alleging fraudulent inducement); *Solar Travel v. Nachtomi*, 2001 WL 641151, at *6 (S.D.N.Y. June 8, 2001) (alleging negligent misrepresentation); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (alleging tortious interference); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343-46 (2005).

To plead loss causation, Plaintiffs must allege either (i) "that the market reacted negatively to a corrective disclosure of the fraud," or (ii) "that that the loss was foreseeable and caused by materialization of the risk concealed by the fraudulent statement." *Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, 2019 WL 1436993, at *8 (S.D.N.Y. Mar. 30, 2019). Plaintiffs allege the latter in relation to the Oxford Loan, and Phase 1 trial. *See* Grander FAC ¶¶ 83-84, 151-152, 167-169; 191-192. Allegations of "materialization of the risk" must be supported with specific factual allegations "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Leykin v. AT & T Corp.*, 423 F. Supp. 2d 229, 239 (S.D.N.Y. 2006) (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005), *aff'd*, 216 F. App'x 14 (2d Cir. 2007). "[T]he risk that caused the loss [must have been] within the zone of risk concealed by the misrepresentations." *Alpha Cap.*, 2019 WL 1436993, at *8. Additionally, the loss must have been "both a foreseeable consequence of the alleged misstatements and omissions, as well as the result of the materialization of the concealed risk." *Id.*; *see, e.g.*, *Stratte-McClure v. Morgan Stanley*, 2013 WL 297954, at *11 (S.D.N.Y. Jan. 18, 2013) (plaintiffs must allege specific facts "provid[ing] a sufficient causal connection between the loss and the misstatement or omission"), *aff'd*, 776 F.3d 94 (2d Cir. 2015).

I hold that Plaintiffs have failed to plead loss causation. Plaintiffs allege that Defendants failed to disclose Oxford's rejection of a request for the second tranche, as well as the suspension of trial enrollment due to an adverse patient event. Grander FAC ¶¶ 83-84, 167-169; Honig TAC ¶¶ 39, 49-50, 137. They then allege that when these problems came to light at "the end of 2018," MabVax lost its ability to raise capital and went bankrupt, causing Plaintiffs' losses. Grander FAC ¶ 167-69; Honig TAC ¶ 137. However, neither the Honig Plaintiffs nor

the Grander Plaintiffs provided any factual allegations to support the claim that "once the market learned the truth," MabVax was driven into bankruptcy.  Additionally, neither complaint alleges when the market learned of Oxford's rejection, so it cannot be determined if the concealment of the Oxford rejection caused MabVax's bankruptcy. In fact, Honig's allegation that he learned about the September 2016 interim trial data in December 30, 2019, nine months after MabVax filed for bankruptcy, undercuts the allegation that MabVax's bankruptcy was due to misstatements and omissions.  *See* Honig TAC ¶ 49.

Regarding the trial enrollment suspension, aside from conclusory allegations that the misrepresentations and omissions caused the loss, the Plaintiffs do not identify any stock-price decline associated with any purported corrective disclosure and therefore fail to establish that the misrepresentations caused the loss. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005) ("[I]f the connection is attenuated, or if the plaintiff fails to demonstrate a causal connection between the content of the alleged misstatements or omissions and 'the harm actually suffered . . . a fraud claim will not lie.").  As such, because Plaintiffs failed to plead loss causation, Plaintiffs' claims for common law fraud, fraudulent inducement, negligent misrepresentation, and tortious interference, Counts III-VII are hereby dismissed.

    d.  Sections 25400(d) and 25500 of the California Corporations Code

Under Sections 25400(d) and 25500 of the California Corporations Code, Plaintiffs must allege (i) that a Defendant made a material misrepresentation or omission; (ii) "for the purpose of inducing the purchase or sale of such security"; (iii) with an intent to defraud. *Cal. Amplifier, Inc. v. RLI Ins. Co.*, 113 Cal. Rptr. 2d 915, 921 (Cal. Ct. App. 2001); *Am. High-Income Tr. v. AlliedSignal*, 329 F. Supp. 2d 534, 545–46 (S.D.N.Y. 2004) (dismissing claims

under Sections 25400 and 25500 where Plaintiff failed to establish an intent to defraud or scienter). A plaintiff can establish scienter for purposes of a securities-fraud claim by alleging facts which show "either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). To allege "motive and opportunity," a plaintiff must allege that a defendant "benefitted in some concrete and personal way from the purported fraud." *Id*.

As previously discussed, Plaintiffs have sufficiently alleged a material misrepresentation with regards to the Oxford loan and the adverse event which suspended patient enrollment. However, their California Corporations Code fraud claims against Defendants suffer from the same deficiency under either the PSLRA or Rule 9(b). Specifically, Plaintiffs have failed to plead facts that give rise to a strong inference of scienter or fraudulent intent. Plaintiffs repeatedly allege that Defendants were motivated to omit information which would impact their compensation packages; *see* Honig ¶¶ 84-85, 108; Grander ¶¶ 88-89, 110; however, "[m]otives that are common to most corporate officers, such as the . . . the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *See Woolgar v. Kingstone Cos.*, 2020 WL 4586792, at *22 (S.D.N.Y. Aug. 10, 2020); *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir.2001) ("a generalized motive, one which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter"). Plaintiffs do not allege that Defendants made the "misstatements" in order to profit through selling their own shares. *See Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at *7 (S.D.N.Y. July 16, 2020) ("[T]o satisfy the 'motive' prong, a plaintiff must generally show that corporate insiders allegedly ma[de] a misrepresentation in order to sell their own shares at a

profit.") (alteration in original).  Plaintiffs allege that Defendants "had actual knowledge that Plaintiffs would not invest if they were told the truth of any one of the above statements;" but provide no factual allegations to support this conclusion.  Honig TAC ¶ 144; Grander FAC ¶ 187.  Accordingly, Plaintiffs have failed to plead facts that support a strong inference of scienter or fraudulent intent and Count I is hereby dismissed.

      e.   Count II California Corporations Code Claims

Under Sections 25401 and 25501 of the California Corporations Code, Plaintiffs must allege (i) that a Defendant offered or sold a security; (ii) in California; (iii) by means of a material misrepresentation or omission.  *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 70 Cal. Rptr. 3d 199, 221 (Cal. Ct. App. 2007). Additionally, Section 25501 "requires privity between the plaintiff and the defendant." *Id.*  A violation of Section 25504 requires (i) a predicate violation under section 25501; and (ii) that a Defendant directly or indirectly controlled a person liable under section 25501.  *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013).  Similarly, to state a claim for a violation of Section 25504.1, Plaintiffs must allege (i) a predicate violation of 25401; and (ii) an intent to defraud by a Defendant.  *Apollo Cap. Fund*, 70 Cal. Rptr. 3d at 257.

Defendants argue that Plaintiffs failed to plead privity or sufficient contacts with California to sustain claims under the California Corporations Code Section 25501. Section 25501 claims based on violations of Section 25401 require strict privity.  *See, e.g.*, *Sharp v. Arena Pharms., Inc.*, 2013 WL 12094819, at *2 (S.D. Cal. Mar. 29, 2013) ("[L]iability under Section 25401 requires 'strict privity' between the parties—*i.e.*, the defendant must have sold the security directly to the plaintiff."); *Apollo Cap. Fund*, 70 Cal. Rptr. 3d at 221 ("Section 25501 on

its face requires privity between the plaintiff and the defendant."); *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1453 (S.D. Cal. 1988) ("The Ninth Circuit has held that liability under section 25401 is limited to actual sellers, so that strict privity is required.").

I hold that Plaintiffs have failed to plead privity because they have not alleged that they purchased the relevant securities directly from a Defendant. Instead, Plaintiffs allege that they purchased their stocks directly from MabVax. Therefore, Plaintiffs claims under Sections 25501 and 25401 are dismissed. Though privity is not required for secondary liability under sections 25504 and 25504.1, secondary liability only exists where "primary liability is stated or established with the privity required by section 25501 and a violation of section 25401." *Moss v. Kroner*, 197 Cal. App. 4th 860, 875, 129 Cal. Rptr. 3d 220, 229 (2011). Because Plaintiffs assert no claims of primary liability against MabVax itself, their claims for secondary liability must fail. Count II is therefore dismissed.

## CONCLUSION

In conclusion, Plaintiffs' motions to strike are denied as procedurally improper. Defendants' motion to dismiss are hereby granted. The Clerk is instructed to close civil cases 20-cv-5872 and 20-cv-8618 and the open motions therein, and grant judgment to the defendants dismissing the complaint.

SO ORDERED.

Dated:     October 8, 2021                                                   Alvin K. Hellerstein
           New York, New York                                               ALVIN K. HELLERSTEIN
                                                                            United States District Judge