UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                       :

BARRY C. HONIG, et al.,               :

                                 :

                      Plaintiffs,    :     20 Civ. 5872 (AKH)
      v.                          :

                                 :

JOHN DAVID HANSEN and GREGORY P.   :
HANSON,                        :

                                 :

                    Defendants.  :
------------------------------------------------------------- X
                                         :

GRANDER HOLDINGS, INC., et al.,     :

                                 :

                    Plaintiffs,    :     20 Civ. 8618 (AKH)
      v.                          :

                                 :

JOHN DAVID HANSEN and GREGORY P.   :   **ORDER GRANTING IN PART**
HANSON,                        :   **AND DENYING IN PART**
                                 :   **MOTION TO DISMISS**

                    Defendants.  :

                                 :

------------------------------------------------------------- X
ALVIN K. HELLERSTEIN, U.S.D.J.:

      Plaintiffs[1] in these two related cases purchased securities from MabVax

Therapeutics, Inc, ("MabVax"), a biotechnology company, at various times between May 7,

2017 and May 11, 2018.  They filed their suits in this court on July 28, 2020 and October 15,

2020, respectively, against MabVax's Chief Executive Officer and Chairman, John David

Hansen ("Hansen"), and MabVax's Chief Financial Officer, Gregory Hanson ("Hanson"),

---

[1] Plaintiffs in the 20-CV-5872 action include Barry C. Honig, GRQ Consultants, Inc., GRQ Consultants, Inc. 401K,
GRQ Consultants, Inc. Roth 401K FBO Barry Honig, GRQ Consultants, Inc. Roth 401K FBO Renee Honig, HS
Contrarian Investments, LLC, Robert S. Colman, and Robert S. Colman Trust UDT 3/13/85, and are collectively
referred to as the "Honig Plaintiffs."  Plaintiffs in the 20-CV-8618 action include Grander Holdings, Inc., Grander
Holdings, Inc. 401K PSP, Brauser Family Trust 2008, Michael Brauser, Daniel Brauser, Benjamin Brauser, Gregory
Brauser, and Joshua Brauser, and are collectively referred to as the "Grander Plaintiffs."

(collectively "Defendants"), asserting claims under the California Corporations Code and California common law based on two misrepresentations discussed below. I previously had dismissed their claims for failure to state plausible claims, but allowed Plaintiffs to re-plead a Fourth Amended Complaint for the Honig Plaintiffs and a Fifth Amended Complaint for the Grander Holdings Plaintiffs. Defendants again move to dismiss. (20-cv-5872, ECF No. 123). I grant in part and deny in part the motion to dismiss both complaints.

      The facts alleged in the complaints have been discussed in previous orders. Only those necessary for my decision are repeated.

      MabVax was a publicly-traded clinical-stage biotechnology company working to develop antibodies to arrest the growth of pancreatic cancer. The successful development of the company's main product, a HuMab-5B1 antibody in the first stage of clinical development, was essential for the company's viability. As MabVax disclosed in public filings in 2016, it was "substantially dependent on the success of [its HuMab-5B1] product candidates;" it could not "earn product revenue until it (or its collaborative partners) complete[d] clinical trials, obtain[ed] regulatory approval, and successfully commercialize[d] one or more of its products" and, until then, it would continue to incur substantial operating losses and "had to raise . . . money through debt and equity financing." Honig Compl. ¶ 28; Grander Compl. ¶¶ 20, 21, 31.

      Plaintiffs are long time private investors in the company. These suits involve additional shares purchased by various members of their respective groups after these disclosures. Two alleged misstatements are in issue. The first arose in the context of a Loan and Security Agreement made with Oxford Finance LLC ("Oxford") on January 15, 2016, by which Oxford would lend the company up to $ 10 million in two tranches; $ 5 million which it made, and a promise to lend the $ 5 million balance if, prior to September 30, 2016, the company's

2

stock became listed on NASDAQ, and if MabVax received "positive interim data on the Phase 1 [trial.]" Honig Compl. ¶¶ 38–39, 51; Grander Compl. ¶¶ 45–46, 50, 69. MabVax met the first condition on August 17, 2016; it did not reach the second. The company's 10-Q filed November 7, 2016 stated:

> The option for the Term B Loan expired on September 30, 2016. The Company is not pursuing completion of any additional debt financing with Oxford Finance, LLC at the present time."

Plaintiffs allege that the term "option expired" was misleading without an additional disclosure that Oxford had found MavVax' interim data not "positive," and had denied the second tranche of funding. Honig Compl. ¶ 54; Grander Compl. ¶ 72.

The second alleged misstatement concerned an adverse event and trial enrollment suspension in the Phase 1 clinical trials. Plaintiffs allege, upon information and belief, that on or about February 12, 2018, MabVax suspended patient enrollment in its Phase 1 HuMab-5B Antibody trials due to an adverse event involving a trial participant. Honig Compl. ¶ 87; Grander Compl. ¶ 133. The company did not disclose the adverse event or trial enrollment suspension at that time. Instead, press releases dated April 2, 2018, and May 3, 2018 continued to tout the progress of its clinical programs. Honig Compl. ¶¶ 87–94; Grander Compl. ¶¶ 137, 139, 140, 142. The April 2 press release quoted Hansen as stating:

> We have made notable progress with our MVT-5873 [HuMab-5B1] and MVT-1075 clinical programs and are very encouraged with the positive data we have seen to date. We look forward to continuing enrollment in each program and participating in key scientific conferences over the course of 2018.

Honig Compl. ¶ 91; Grander Compl. ¶ 139. The May 3 press release quoted Hansen as stating:

> MabVax intends to use the net proceeds of the offering to fund continuing clinical developments of hits HuMab 5B1 antibody designated MVT-5873 in combination with gemcitabine and nab-paclitaxal in first line therapy for the treatment of patients newly diagnosed with pancreatic cancer. The

3

> Company has treated two cohorts of patients for a total of six patients to
> date in this study; and these funds will enable the Company to continue
> enrolling up to approximately 10 additional patients with the objective of
> confirming early observations.

Honig Compl. ¶ 92; Grander Compl. ¶ 140. The company ultimately disclosed the adverse event

and trial enrollment suspension in its 10-Q filed October 15, 2018. The disclosure referred back

to the company's press release of February 12, 2018, discussing favorable interim results in a

clinical study of a six-person cohort that seemed to arrest the disease. The disclosure then went

on to say that the company was suspending "patient enrollment at the current dose" because of

"adverse events." The full disclosure follows:

> On February 12, 2018, we reported on interim results of the current cohort
> of the Phase 1 study, in which MVT-5873 was given in combination with
> nab-paclitaxel and gemcitabine to patients newly diagnosed with CA19-9
> positive pancreatic cancer. MVT-5873 at a dose of 0.125 mg/kg when
> added to first-line chemotherapy was generally well tolerated by all
> subjects. At that time, all six patients in the current cohort demonstrated
> measurable tumor reductions, with four patients meeting the criteria for
> partial response (PR) and two patients meeting the criteria for stable
> disease (SD). We believe these results further confirm results reported on
> a portion of the cohort in late 2017. Patient CA19-9 levels, which are a
> prognostic indicator of the disease state, were markedly reduced in all
> subjects with this combination therapy. Due to adverse events potentially
> related to the combination of nab-paclitaxel, gemcitabine and MVT-5873,
> not seen in the monotherapy clinical study, the Company has suspended
> patient enrollment at the current dose. We are evaluating plans to enroll
> additional patients at a lower dose to further explore safety and response in
> a larger population.

MabVax 10-Q, Oct. 15, 2018. See Honig Compl. ¶¶ 88, 94–95; Grander Compl.

¶¶ 135–36, 142–43.

Plaintiffs allege that the disclosure came late, and that the April 2 and May 3,

2018 press releases painted "a misleadingly rosy picture of the progress of the trials," the

strength of which, induced certain of Plaintiffs to make further investments in MabVax on May

2, 8, and 11, 2018. Honig Compl. ¶¶ 87–94, 96 (indicating that on May 2, 2018, Robert S.

4

Colman Trust UDT 3/13/85 invested $40,000, and on May 8, 2018, GRQ Consulatants, Inc. Roth 401K FBO Renee Honig invested $300,000); Grander Compl. ¶¶ 137, 139, 142, 145 (indicating that on May 11, 2018, Grander Holdings 401K invested $100,000, and that Benjamin Brauser, Daniel Brauser, Gregory Brauser, and Joshua Brauser each invested $20,000). According to Plaintiffs, Defendants solicited these investments not to fund the Phase 1 trials but instead to fund Defendants' compensation. Honig Compl. ¶ 95; Grander Compl. ¶ 144.

MabVax was not successful in completing clinical studies or otherwise bringing HuMab-51 to market. In March 2019, it sold its assets to BioNTech AG and, the next day, filed for protection under Chapter 11 of the bankruptcy laws, causing Plaintiffs' investments to lose all value. Honig Compl. ¶ 156; Grander Compl. ¶ 169.

Plaintiffs allege claims under sections 25400(d) and 25500 (Count I); and 25401, 25501, 25504, and 25504.1 of the California Corporations Code (Count II); Fraudulent Inducement (Count III); Common Law Fraud (Count IV); Common Law Negligent Misrepresentation (Count V); and, for the Honig plaintiffs, Tortious Interference with Contract (Count VII). On Defendants' motion to dismiss, I dismissed the Honig Third Amended Complaint and the Grander Fourth Amended Complaint. *See* 20-CV-5872, ECF No. 114; 20-CV8618, ECF No. 42. Plaintiffs moved for rehearing and leave to amend their complaints; I granted leave; and Defendants move again to dismiss.

## DISCUSSION

I.      Legal Standard

To survive a motion to dismiss, the Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court need not accept mere conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662,

5

678 (2009); *see also Gissin v. Endres*, 739 F. Supp. 2d 488, 499 (S.D.N.Y. 2010). Because all of

Plaintiffs' claims sound in fraud, including the tortious interference of contract claim, they are

subject to Rule 9(b)'s heightened pleading standard. *See Caiafa v. Sea Containers Ltd.*, 331 F.

App'x 14, 16 (2d Cir. 2009) (holding that a claim sounds in fraud when it "relies on the same

factual allegations that served as a basis for [the fraud-based] claim"); *Matsumura v. Benihana

Nat'l Corp.*, 542 F. Supp. 2d 245, 251-52 (S.D.N.Y. 2008) (fraudulent inducement claim is

subject to Rule 9(b)); *Siegal v. Gamble*, 2016 WL 1085787, at \*6 (N.D. Cal. Mar. 21, 2016)

("Because [Plaintiff] has asserted [that Defendants] violated California's securities laws when

they made false statements and withheld material information, the claim sounds in fraud and

must comply with Rule 9(b)."); *B & M Linen v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474,

481-84 (S.D.N.Y. 2010) (fraud and negligent misrepresentation subject to Rule 9(b)).

      Plaintiffs concede that Rule 9 applies, but dispute whether the Private Securities

Litigation Reform Act ("PSLRA") pleading requirements apply when evaluating claims under

the California Corporations Code. "[F]ederal cases construing federal securities laws, including

pleading requirements, are persuasive authority when interpreting [California] law." *Irving

Firemen's Relief & Ret. Fund v. Uber Techs.*, 998 F.3d 397, 405–07 (9th Cir. 2021); *see also

Kamen v. Lindly*, 114 Cal. Rptr. 2d 127, 132 (Cal. Ct. App. 2001) ("Where, as here, California

law is modeled on federal laws, federal decisions interpreting substantially identical statutes are

unusually strong persuasive precedent."). "The particularity requirement of the PSLRA is

largely the same as Rule 9(b). When plaintiffs allege, on information and belief, that defendants

made material misstatements or omissions, "the complaint must state with particularity all facts

on which that belief is formed." *In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 184

(S.D.N.Y. 2003); *see In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 391–92 (S.D.N.Y. 2006).

Under Rule 9(b), Plaintiffs must state with particularity "the circumstances constituting fraud" or mistake. *SEC v. Lyon*, 529 F. Supp. 2d 444, 449 (S.D.N.Y. 2008). And "when pleading scienter as part of a fraud claim," the Plaintiffs must "allege facts that give rise to a strong inference of fraudulent intent." *Wurtsbaugh v. Banc of Am. Sec. LLC*, 2006 WL 1683416, at *4 (S.D.N.Y. June 20, 2006); *see also ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (Plaintiffs must plead "with particularity facts giving rise to a strong inference that the defendant acted with . . . an intent to deceive, manipulate, or defraud.").

II.     Analysis

Section 25400(d) of the California Corporations Code makes it unlawful for any person "selling or offering for sale or purchasing or offering to purchase the security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading . . . and which he knew or had reasonable ground to believe was so false or misleading." *California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 109 (Cal. App. 2001).

Section 25401 of the California Corporations Code makes it illegal to "offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Moss v. Kroner*, 197 Cal. App. 4th 860, 872–73,

(2011) (quoting Cal. Corp. Code § 25401). Section 25501 establishes civil liability for a

violation of Section 25401. *Id.* at 873. In addition to the primary or direct civil liability

established in Section 25501, the California Legislature has extended liability for a violation to

specified secondary actors. Under Sections 25504 and 25504.1, certain actors—those who

materially aid in the transaction constituting the violation (§ 25504) and those who materially

assist in the violation with the intent to deceive or defraud (§ 25504.1)—may be held jointly and

severally liable. *Id.* Any claim for secondary liability, however, must be predicated upon a

primary violation. Accordingly, to state a claim for secondary liability, Plaintiffs must allege

both a primary violation under Section 25401 and 25501, and the elements required under

Sections 25504 and 25504.1.

      A.    Material Misrepresentation or Omission

      For any of Plaintiffs' claims to survive the motions to dismiss, Plaintiffs must

make a threshold showing that Defendants made misrepresentations or omissions which were

misleading and material. *See Ins. Underwriters Clearing House v. Natomas Co.*, 184 Cal. App.

3d 1520, 1526 (1986). Plaintiffs may do so by alleging either that Defendants made an

affirmative statement that was untrue or misleading as to a material fact, or that Defendants

failed to disclose a fact, necessary to make the statements made, in light of the circumstances

under which they were made, not misleading. *See id.*; *see also Matrixx Initiatives, Inc. v.

Siracusano*, 563 U.S. 27, 38 (2013). When determining whether statements are misleading,

courts must read them in the context of the whole document or statement, and judge them based

upon the facts as they existed at the time. *See Omnicare Inc. v. Laborers Dist. Council Constr.

Indus. Pension Fund*, 575 U.S. 175, 192–93, 196 (2015). A statement is actionable only if it

"affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

Further, the securities laws "do not create an affirmative duty to disclose any and all material information." *Sanofi Secs. Litig. v. Meeker*, 87 F. Supp. 3d 510, 527 (S.D.N.Y. 2015), *aff'd, Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) (quoting *Matrixx Initiatives*, 563 U.S. at 43–44). "Disclosure of information is not required . . . simply because it may be relevant or of interest to a reasonable investor." *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002). Instead, an omission is actionable only when disclosure of information is "necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Sanofi*, 87 F. Supp. 3d at 527 (quoting *Matrixx*, 563 U.S. at 43–44). A statement is material, when under all the circumstances, there is a substantial likelihood that a reasonable investor would consider it important in reaching an investment decision. *Natomas Co.*, 184 Cal. App. 3d at 1526; *Greenapple v. Detroit Edison Co.*, 468 F. Supp. 702, 708 (S.D.N.Y. 1979), *aff'd* 618 F.2d 198 (2d Cir. 1980); *see also Lynch v. Cook*, 148 Cal. App. 3d 1072, 1081–87 (1983) (stating that the California Corporations Code test for materiality models the federal standard).

1.    Statements that Oxford Loan "Option Expired"

Plaintiffs claim that the term "option expired" was a material misstatement. I disagree and hold that Plaintiffs fail to plausibly allege a misrepresentation or omission based on Defendants' statements regarding the Oxford Loan.[2]

---

[2] My ruling on October 8, 2021 was contrary. I held that Plaintiffs plausibly alleged a misstatement with respect to Defendants' statements that the Oxford Loan "expired." Upon oral argument and close reading of the Fourth and Fifth Amended Complaints, I exercise my discretion to reconsider my prior ruling and depart from it. *See Dilaura v. Power Auth. of Ny*, 982 F.2d 73, 77 (2d Cir. 1992) (quoting *Virgin Atl. Airways v. Nat'l Meditation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), *cert. denied* 113 S. Ct. 67 (1992)) ("[T]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.").

Defendants' statements that the term expired did not conceal any material fact. The November 7 10-Q filing reiterated that the second tranche of funding depended on two conditions being met prior to September 30, 2016—MabVax's relisting on an exchange and "positive" interim clinical data. If both conditions were met prior to the deadline, Oxford could *not* decline the second tranche. MabVax met the first condition in August, but still did not receive the second tranche of funding. Therefore, a reasonable investor could only conclude that the second condition had not been met—that whatever Oxford needed to see to deem the results "positive" was not present.

Plaintiffs claim that they were entitled to know that Defendants requested the second tranche of funding, and that Oxford denied that request. They contend that this disclosure was necessary to convey Oxford's opinion as to whether the interim trial data was promising or catastrophic. The mere fact that Plaintiffs desired that information does not mean Defendants had a duty to disclose it; however, given that MabVax and Defendants were desperate for funding, it is inconceivable that MabVax simply would have let the loan expire, or that it would have declined the funding, if offered. Thus, when MabVax (through Defendants) stated that the term for the loan had expired, it necessarily conveyed that the second condition had not been met, and that Oxford believed the interim data was not sufficiently positive to require the release of the second tranche. Because the use of the word "expired" did not "affirmatively create an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]," I find the statements not actionable. *See Brody*, 280 F.3d at 1006; *see also In re Express Scripts Holdings Co. Sec. Litig.*, 773 Fed. App'x 9, 12 (2d Cir. 2019) (finding no fraud where public statements were consistent with available facts).

2.      Failure to Disclose the Adverse Event and Trial Enrollment Suspension

Plaintiffs allege that Defendants issued press releases on April 2 and May 3, 2018

that were misleading as to the progress of the Phase 1 clinical trials.  They allege that due to an

adverse event, enrollment in the Phase I clinical trials was suspended on February 18, 2018.

Instead of disclosing this information, Defendants issued press releases on April 2 and May 3,

2018, which touted the progress of the trials and solicited funding for further patient enrollment.

The corrective disclosure came five months later in the Company's 10-Q filing.  Accepting the

Plaintiffs' allegations as true, as I must when ruling on a motion to dismiss, I find that Plaintiffs

plausibly allege a material misrepresentation with respect to the press releases issued on April 2

and May 3, 2018.

If, as Plaintiffs allege, the company suspended enrollment on February 18, 2018,

then the April 2 and May 3, 2018 press releases were contrary.  The April 2 press release touted

the "notable progress" of the clinical programs and stated that the company "look[ed] forward to

continuing enrollment in each program."  The May 3 press release solicited funding to continue

clinical developments of MabVax's HuMab-51 antibody and stated that the funds would enable

the Company to continue enrolling approximately 10 additional patients in a study.  If trial

enrollment had been suspended in February, and Defendants were still soliciting investments to

fund those trials, the press releases were misleading because they "affirmatively create[d] an

impression of a state of affairs that differ[ed] in a material way from the one that actually

exist[ed]."  *See Brody*, 280 F.3d at 1006.  These statements of April 2 and May 3, 2018 were

material to purchases of securities on May 2, 8, and 11, 2018.

The omissions were also material.  Given that Defendants purported to need funds

to continue the trials, a reasonable investor certainly would consider the suspension important

when considering whether to invest make their investments on May 2, 8, and 11, 2018. *See Natomas Co.*, 184 Cal. App. 3d at 1526. Accordingly, I find that the April 2 and May 3, 2018 press releases were materially misleading and therefore actionable. I now consider whether Plaintiffs state a claim for relief under Counts I and II.

B.   Count I – Cal. Corp. §§ 25400(d) and 25500

To state a claim under Cal. Corp. Code §§ 25400(d) and 25500, Plaintiffs must allege that (i) a Defendant made a material misrepresentation or omission; (ii) "for the purpose of inducing the purchase or sale of such security"; (iii) with an intent to defraud. *Id.* at 108–11; *Am. High-Income Tr. v. Alliedsignal*, 329 F. Supp. 2d 534, 545–46 (S.D.N.Y. 2004) (dismissing claims under Sections 25400 and 25500 where Plaintiff failed to establish an intent to defraud or scienter). In addition, the Ninth Circuit recently held that loss causation also is an element, and that in determining whether a plaintiff has adequately pleaded such causation, courts may apply the federal standard of loss causation. *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 998 F.3d 397, 405–07 (9th Cir. 2021) (noting that no California law directly addressed this issue and that in the absence of such authority, federal law is unusually persuasive authority).

Plaintiffs plausibly state a claim under Cal. Corp. Code §§ 25400(d) and 25500. Plaintiffs allege a material misrepresentation (touting the progress of the trials that had been suspended); made for the purpose of inducing Plaintiffs' investment (soliciting funding to enroll additional patients); with the intent to defraud (knowing that trial enrollment had been suspended but soliciting funds for their personal benefit). *See Emps. Ret. Sys. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015) (citing *ECA & Local 134 IBEW Joint Pension Trust of Chi. V. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009)) (indicating that scienter may be inferred where

defendants obtain a concrete and personal benefit and knew or had access to information suggesting that their public statements were not accurate).

Plaintiffs also plausibly allege loss causation. At the pleading stage, Plaintiffs need only identify specific misstatements or omissions that can be connected to Plaintiffs' eventual loss. *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 188–89 (2d Cir. 2015). Under the "materialization of risk" approach, "a misstatement or omission is the proximate cause of an investment loss if the risk that caused the loss was within the zone of the risk concealed by the misrepresentations or omissions alleged by the disappointed investor." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 176–77 (2d Cir. 2005).

Plaintiffs allege that if the adverse event and trial enrollment suspension had been disclosed earlier, the disclosure would have prevented Defendants from securing further funding and ruined the Company. Defendants withheld this information from the market, enabling them to solicit further investments from Plaintiffs. Indeed, Plaintiffs invested in May 2018 based upon the reported strength of the progress in the clinical trials and without knowledge of the enrollment suspension. In October 2018, however, the Company issued a corrective disclosure, which revealed the adverse event and suspension. This caused Defendants to be unable to raise further funds and forced MabVax into bankruptcy. Thus, when MabVax issued its corrective disclosure, the risk that Defendants sought to conceal (that MabVax did not have a viable product) materialized, causing the company to fail and rendering Plaintiffs' investments worthless.

C.   Count II – Cal. Corp. §§ 25401, 25501, 25504, 25504.1

To state a claim under Cal. Corp. Code §§ 25401, 25501, 25504, 25504.1, Plaintiffs must allege both a primary and secondary violation. A primary violation under

13

Sections 25401 and 25501 requires that (i) a Defendant offered or sold a security; (ii) in California; (iii) by means of a material misrepresentation or omission. *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 70 Cal. Rptr. 3d 199, 221 (Cal. Ct. App. 2007). Section 25501 requires strict privity between the plaintiff and the defendant. *Id.*; *accord. Moss*, 197 Cal. App. 4th at 874. A secondary violation under Section 25504 requires (i) a predicate violation under section 25501; and (ii) that a Defendant directly or indirectly controlled a person liable under section 25501. *Id.* Similarly, a violation of Section 25504.1 requires (i) a predicate violation under 25501; and (ii) an intent to defraud by a Defendant. *Apollo Cap. Fund*, 70 Cal. Rptr. 3d at 257. Neither Sections 25504 nor 25504.1 requires strict privity between a plaintiff and defendant. *Id.* Loss causation also is not an element of either claim.

Plaintiffs plausibly state a claim under Cal. Corp. Code §§ 25401, 25501, 25504, 25504.1 because they plausibly allege both a primary and secondary violation. Plaintiffs plausibly allege a primary violation by MabVax (issuing misleading press releases), with whom Plaintiffs, as investors, were in privity. They plausibly allege a secondary violation under Section 25504 by Defendants as controlling officers, as well as a secondary violation under Section 25504.1 because, as indicated above, Defendants caused the misleading statements to be made with an intent to defraud.

\* \* \*

In sum, I find that Plaintiffs' claims based upon the Oxford Loan statements are not actionable and dismiss them with prejudice. However, I find that Plaintiffs' claims based upon Defendants' failure to disclose the adverse event and trial enrollment suspension are actionable but only as to the investments made after the misleading press releases but prior to the corrective disclosure on October 15, 2018. Accordingly, the motions to dismiss is denied as to

14

the claims by Robert S. Colman Trust UDT 3/13/85, GRQ Consultants, Inc. Roth 401K FBO Renee Honig, Grander Holdings 401K, Benjamin Brauser, Daniel Brauser, Gregory Brauser, and Joshua Brauser, who invested on May 2, 8, or 11, 2018. All other Plaintiffs and claims are dismissed with prejudice.

## CONCLUSION

For the reasons provided above, Defendants' motion to dismiss is denied in part and granted in part. The motion to dismiss is denied as to Plaintiffs Robert S. Colman Trust UDT 3/13/85, GRQ Consultants, Inc. Roth 401K FBO Renee Honig, Grander Holdings 401K, Benjamin Brauser, Daniel Brauser, Gregory Brauser, and Joshua Brauser who made investments on May 2, 8, or 11, 2018. The motion to dismiss is granted with prejudice as to all remaining Plaintiffs and claims. The parties shall make initial disclosures and appear for an initial conference on May 27, 2022, at 10 a.m. The Clerk of Court shall terminate ECF No. 123.

SO ORDERED.

Dated:     April **27**, 2022
          New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

15