### UNITED STATES U.S. DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARRY C. HONIG, GRQ CONSULTANTS, INC., GRQ CONSULTANTS, INC. 401K, GRQ CONSULTANTS, INC. ROTH 401K FBO BARRY HONIG, GRQ CONSULTANTS, INC. ROTH 401K FBO RENEE HONIG, HS CONTRARIAN INVESTMENTS, LLC, ROBERT S. COLMAN, and ROBERT S. COLMAN TRUST UDT 3/13/85, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN DAVID HANSEN and GREGORY P. HANSON, <br><br> Defendants. | Case No. 1:20-cv-05872-AKH-SN <br><br> **ANSWER TO FOURTH AMENDED COMPLAINT** |

### NATURE OF THIS ACTION

1.      Plaintiffs in this action are long-time, loyal investors in MabVax, a publicly traded early-stage biotechnology company. From 2016 to 2018, John David Hansen, President, CEO, and Chairman of the Board of MabVax ("Hansen"), and Gregory P. Hanson, the Chief Financial Officer ("CFO") of MabVax ("Hanson") duped the Plaintiffs into making additional investments into MabVax by knowingly and intentionally making material misrepresentations and omissions that were relied upon by the Plaintiffs in connection with investment decisions and the subject of which caused Plaintiffs' economic loss.

**ANSWER:**  Defendants deny the allegations in Paragraph 1.

2.      Defendants knowingly and willfully misled the Plaintiffs to secure and retain Plaintiffs' investments in order for Defendants to keep MabVax financially afloat and sustain their staggeringly high compensation. From September 2016 to 2018, Plaintiffs invested over

$4,900,000 in MabVax based upon and in reliance upon Defendants' material misrepresentations and omissions. From just 2016 to 2018, Defendants' total combined compensation including salary, equity grants, and other benefits was over $5,200,000[1], a number vastly higher than the average compensation for similarly situated executives of early-stage companies, and much more reflective of companies in the Russell 2000 with assets between 10 and 125 times the amount of MabVax.[2]

**ANSWER:** Defendants deny the allegations in Paragraph 2 and Footnotes 1 and 2, except state that Paragraph 2 purports to selectively quote and characterize SEC filings to which Defendants refer the Court for their contents.

3.       MBVX earned no significant revenues during the tenure of Hansen and Hanson. Both Hansen and Hanson repeatedly drew compensation out of MabVax that represented a material percentage of the net financing capital provided by outside investors:

| | Net Cash Provided by financing activities | J. David Hansen Compensation | Greg Hanson Compensation | % of Net Financing |
|---|---|---|---|---|
| 2015 | $13,210,540 | $4,183,665 | $2,217,222 | 48.45% |
| 2016 | $12,821,812 | $989,257 | $453,602 | 11.25% |
| 2017 | $7,923,003 | $2,165,915 | $848,201 | 38.04% |

[1] According to public filings, in 2016, Hansen caused MabVax to compensate him $989,257 ($418,438 salary, $141,400 bonus, $393,702 options, $35,717 "other comp"). In 2017, Hansen caused MabVax to compensate him $2,165,915 ($427,876 salary, $448,500 in stock, $1,252,905 options, $36,634 "other comp"). In 2018, Hansen caused MabVax to pay him a salary of $430,000. In 2016, Hanson caused MabVax to compensate him $453,602 ($276,014 salary, $62,790 bonus, $99,743 options, $15,055 "other comp"). In 2017, Hanson caused MabVax to compensate him $848,201 ($309,312 salary, $277,016 stock, $224,945 options, $36,928 "other comp"). In 2018, Hanson caused MabVax to pay him a salary of $317,386. Unfortunately, different public filings by MabVax include different compensation numbers for the Defendants.

[2] For example, in "The BDO 600," a 2016 survey of CEO and CFO compensation practices, BDO found that the average compensation paid to CEOs of companies with $100M to $500M in revenues and $1.25B in assets was $2,324,230 in 2015, similar to Hansen's 2017 total compensation of $2,165,915. For CFOs, BDO found the average total compensation was $964,824, similar to Hanson's 2017 total compensation of $848,201. Of course, MabVax's revenues and assets were no close to $100M.

| 2018 | $2,686,478 (through Q3 2018) | $430,000 | $317,386 | 27.8% |
|---|---|---|---|---|

**ANSWER:**  Defendants deny the allegations in Paragraph 3, except state that MabVax, as a clinical-stage biotechnology company, did not earn significant revenue.

4.    Defendants have a history of concealing material information from Plaintiffs, which they knew would be relied upon, for the purpose of attaining investments to finance their salaries.

**ANSWER:**  Defendants deny the allegations in Paragraph 4.

5.    For example, at the same time that they were using Plaintiffs' money to fund their excessive compensation, Defendants were actively concealing material non-public information from Plaintiffs while providing that same information to select other investors. As will be explained in greater detail, MabVax entered a senior secured debt financing with Oxford Finance LLC pursuant to which Oxford would loan MabVax an initial $5 million, and later provide a second tranche of $5 million if MabVax's antibody trial showed positive results. When MabVax failed to produce positive results, Oxford refused to loan MabVax the second $5 million. MabVax and Defendants knew about but concealed from Plaintiffs the poor interim results of the trial (which was obviously sufficient enough to scare Oxford from funding the second tranche of its loan), and further, MabVax and Defendants lied to Plaintiffs and other investors by telling them that the timeline for the second Oxford loan had merely expired—omitting that in reality Oxford had rejected MabVax's request for a second loan based on information disclosed only to Oxford.

**ANSWER:**  Defendants deny the allegations in Paragraph 5, except state that MabVax entered into a financing agreement with Oxford Finance LLC.

6.    Another example of Defendants' fraud arose in early 2018, when MabVax suspended patient enrollment in the Phase 1 clinical trial of its principal therapy due to an "adverse

event" involving a trial participant. Defendants and MabVax purposefully did not timely disclose this "adverse event," nor did they disclose that the Phase 1 trial was suspended. Instead, MabVax and Defendants continued to publicly report that the Phase 1 trial "continued to yield encouraging results" and that the company was "encouraged with the positive data." MabVax and Defendants were fully aware of, and intentionally omitted, the fact of patient suspension and the adverse event. MabVax and Defendants did so at a time when MabVax was desperately short on cash and would have run out of money and folded without fresh investment. Induced by the false statements regarding the clinical trial, Plaintiffs purchased additional MabVax securities during 2018.

**ANSWER:** Defendants deny the allegations in Paragraph 6, except state that Paragraph 6 purports to selectively quote from certain MabVax filings, to which Defendants refer the Court for their contents.

7.      Today, while MabVax investors have lost money on their investments, and MabVax is in bankruptcy, Defendants have walked away with millions of dollars in various forms of compensation and brand-new consulting agreements. Through the Bankruptcy proceedings, Defendants sold MabVax's proprietary technology to another company, and secured for themselves consulting agreements with that same company.

**ANSWER:** Defendants deny the allegations in Paragraph 7, except state that (i) MabVax sold assets as part of bankruptcy proceedings; and (ii) Defendants signed consulting agreements with BioNTech.

8.      Had Defendants not actively lied to Plaintiffs and concealed material information, Plaintiffs would not have invested millions of additional dollars into MabVax and would not have suffered the significant losses and damages that they have now incurred. Plaintiffs accordingly sue Defendants directly to recover their damages for Defendants' fraud.

**ANSWER:**  Defendants deny the allegations in Paragraph 8, except state that the second sentence in Paragraph 8 purports to characterize Plaintiffs' claims, to which no response is required.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and more than $75,000 is at issue, exclusive of interest, costs and fees.

**ANSWER:**  Defendants admit that the Court has subject-matter jurisdiction.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

**ANSWER:**  Defendants admit that venue is proper in this Court.

11.     Personal jurisdiction over Defendants exists because Defendants regularly engaged in business and transacted business in New York, as discussed below, and because Defendants have consented to personal jurisdiction in New York.

**ANSWER:**  Defendants deny the allegations in Paragraph 11, except state that (i) the Court has personal jurisdiction over Defendants; and (ii) Defendants consented to personal jurisdiction in this Court.

12.     Numerous investment documents, including the August 11, 2017 Securities Purchase Agreement and April 27, 2018 Securities Purchase Agreement, among others, signed by the Plaintiffs in connection with their MabVax investments state, in sum or substance:

> Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, Borough of Manhattan, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper.

**ANSWER:** Defendants deny the allegations in Paragraph 12, except state that Paragraph 12 purports to selectively quote and characterize investment documents and securities purchase agreements, to which Defendants refer the Court for their contents.

13.     Several of the investment documents signed by the Plaintiffs make clear that this forum-selection clause applies to claims "whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, partners, members, employees or agents", which includes Defendants.

**ANSWER:** Defendants deny the allegations in Paragraph 13, except state that Paragraph 13 purports to selectively quote and characterize investment documents, to which Defendants refer the Court for their contents.

14.     During the relevant period, Defendants met with Honig, on behalf of himself and the Honig-Related Entities, and other investors in New York, New York on several occasions to solicit investments from Honig, other investors, and the Honig-Related Entities that are at issue in this action. Thus, the causes of action here arise from the investment documents making clear that New York is the appropriate forum, and the causes of action arise in part from these solicitations, which took place in New York. Moreover, MabVax, at Defendants' direction, regularly transacted business in New York, and entered into agreements with entities in New York, including with Cold Spring Harbor Laboratory, a nonprofit New York State education corporation, and Y-MABS Therapeutics, Inc., which has a principal place of business in New York, New York. An investigative site for MabVax's clinical trials was Memorial Sloan Kettering Cancer Center in New York City.

**ANSWER:**     Defendants deny the allegations in Paragraph 14, except state that (i) Defendants at times spoke with members of Plaintiffs' illegal investor group about investing in

MabVax, including in New York; (ii) Defendants at times conducted business in New York; (iii) Paragraph 14 purports to characterize Plaintiffs' claims, to which no response is required; and (iv) Memorial Sloan Kettering Cancer Center in New York City was an investigative site for MabVax's clinical trials.

## PARTIES

15.     Plaintiff Barry C. Honig ("Honig") is a citizen of Florida, resident in Boca Raton and Palm Beach County Florida. He purchased shares of MabVax common and preferred stock and warrants, including in the Series M and N Private Placement Financings, and was damaged thereby.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 15 because the Court dismissed all of Honig's claims with prejudice.

16.     Plaintiff GRQ Consultants, Inc. ("GRQ") is a Florida corporation with its principal place of business in Palm Beach County, Florida, and thus a Florida citizen. GRQ is solely owned by Florida citizen Honig and was operated by Florida citizen Honig during the relevant period.[3] It is the plan administrator for Plaintiffs GRQ Consultants, Inc. Roth 401k FBO Barry Honig, GRQ Consultants, Inc. Roth 401k FBO Renee Honig, and GRQ Consultants, Inc. 401k, all of which retirement plans were established in Florida and the beneficiaries of which are entirely citizens of Florida.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 16, and Footnote 3 because the Court dismissed all of GRQ Consultants, Inc.'s claims with prejudice.

17.     Plaintiff HS Contrarian Investments, LLC ("HSCI") is a Delaware limited liability

---

[3] Alan Honig is the current President of GRQ.

company, with its principal place of business in Broward County, Florida. Non-party John Stetson ("Stetson") is the managing member of HSCI. Stetson is a natural person who resides in Broward County, Florida and is a citizen of Florida. Florida citizen Honig is the only other member of HSCI. HSCI is a citizen of Florida.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 17 because the Court dismissed all of HSCI's claims with prejudice.

18.     Plaintiff Robert S. Colman ("Colman") is a citizen of Idaho who resides in Ketchum, Idaho. He purchased shares of MabVax common and preferred stock and warrants, including in the Series M and N Private Placement Financings, and was damaged thereby.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 18 because the Court dismissed all of Colman's claims with prejudice.

19.     The Robert S. Colman Trust UDT 3/13/85 is a revocable trust formed under the laws of the State of Idaho and is based in Idaho. Plaintiff Colman, an Idaho citizen, is the sole trustee and sole beneficiary of the Robert S. Colman Trust UDT 3/13/85.

**ANSWER:** Defendants deny the allegations in Paragraph 19, except state that (i) Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 and deny the allegations on that basis; and (ii) the allegations in Paragraph 19 state a legal conclusion to which no response is required.

20.     Defendant John David Hansen ("Hansen") was, at all relevant times, President, CEO, and Chairman of the Board of Directors of MabVax. Hansen signed many of MabVax's public filings, including the January 30, 2018 Form 8-K, its February 6 and May 3, 2018 Form 8-Ks announcing the Series M and N Private Placement Financings. He is a California citizen and resident. Hansen personally solicited the Plaintiffs, within and outside of California, on multiple

occasions to make investments into the Company. Hansen also had personal knowledge of all the relevant material non-public information and was responsible for public disclosures.

**ANSWER:**  Defendants deny the allegations in Paragraph 20, except state that (i) Hansen was MabVax's CEO; (ii) Paragraph 20 purports to characterize certain MabVax SEC filings, to which Defendants refer the Court for their contents; (iii) Hansen at times spoke with members of Plaintiffs' illegal investor group about investing in MabVax; and (iv) the fifth sentence of Paragraph 20 calls for a legal conclusion to which no response is required.

21.    Defendant Gregory P. Hanson ("Hanson") was, at all relevant times, the Chief Financial Officer ("CFO") of MabVax. Hanson signed many of the SEC filings at issue here and was the MabVax officer who primarily corresponded by phone and email with Plaintiffs. He is a California citizen and resident.

**ANSWER:**  Defendants deny the allegations in Paragraph 21, except state that (i) Hanson was MabVax's CFO; (ii) Paragraph 21 purports to characterize certain MabVax SEC filings, to which Defendants refer the Court for their contents; (iii) Hanson lives in California; and (iv) Hanson at times spoke with members of Plaintiffs' illegal investor group.

## STATEMENT OF FACTS

22.    MabVax was originally incorporated in Delaware in 1988 under the name Terrapin Diagnostics, Inc. It was renamed Telik, Inc., in 1998, and changed its name to MabVax in September 2014 as a result of a merger with MabVax Therapeutics, Inc. At all times relevant to this complaint, MabVax was publicly traded.[4] As a Delaware registered company, the Company, and its officers and directors are subject to the fiduciary provisions of the Delaware General Corporate Law.

---

[4] Plaintiffs also made certain investments in MabVax in 2014 before it became publicly traded. Those investments are not at issue in this complaint.

**ANSWER:** Defendants admit the allegations in Paragraph 22, and Footnote 4, except state that (i) the fourth sentence in Paragraph 22 states a legal conclusion to which no response is required; and (ii) the second sentence in Footnote 4 purports to characterize Plaintiffs' claims, to which no response is required.

23.     Because MabVax was a publicly traded company, it regularly made public filings to the SEC. Plaintiffs regularly and routinely reviewed and relied on those public filings, which were signed by Hansen in California. As executives of a publicly traded company, Defendants knew that investors, including Plaintiffs, would read and rely on MabVax's public filings.

**ANSWER:**  Defendants deny the allegations in Paragraph 23, except state that (i) MabVax was a publicly traded company and publicly filed documents with the SEC; (ii) Paragraph 23 purports to characterize certain MabVax SEC filings, to which Defendants refer the Court for their contents; and (iii) Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' activities and deny the allegations on that basis.

24.     Throughout 2014, 2015, 2016, 2017, and 2018, MabVax regularly described itself in public documents as a "clinical-stage biotechnology company focused on the development of antibody-based products and vaccines to address unmet medical needs in the treatment of cancer."

**ANSWER:**  Defendants deny the allegations in Paragraph 24, except state that Paragraph 24 purports to selectively quote and characterize public documents, to which Defendants refer the Court for their contents.

25.     Plaintiffs began investing in MabVax in early 2014, before it became publicly traded. By January 1, 2016, Plaintiffs had invested millions of dollars. By that point, Defendants had repeatedly solicited Plaintiffs for investments.

**ANSWER:** Defendants deny the allegations in Paragraph 25, except state that (i) members of Plaintiffs' illegal investor group invested in MabVax at various times; (ii) MabVax was a publicly traded company; and (iii) Defendants at times spoke with members of Plaintiffs' illegal investor group about investing in MabVax.

26.     During 2017 and 2018, MabVax continually reduced full-time employee headcount from approximately twenty-four to only six employees, of which Defendants at all times were the principal two. Given the tiny size of MabVax, Defendants were intimately familiar with all of the material operations of the company, including the status of its important clinical trials, and the issuance of information to the public about those trials.

**ANSWER:** Defendants deny the allegations in Paragraph 26, except state that Defendants were MabVax officers and familiar with its operations.

27.     As is quite often the case, Plaintiffs invested in a company (MabVax) where they were not experts in the field it operated in. Because of this, among other reasons, Defendants knew that investors, such as Plaintiffs, would and did rely on public filings by the Company, the views of sophisticated institutional investors, and statements of the Company's officers and directors, and that Plaintiffs would expect such public filings, views and statements to be complete and truthful.

**ANSWER:** Defendants deny the allegations in Paragraph 27.

I.     ***Omissions Regarding the Oxford Loan***

     a.     *The Importance of HuMab-5B1*

28.     MabVax's HuMab-5B1 antibody was at the center of its and Defendants' campaign to attract investors, including Plaintiffs. On July 31, 2015, MabVax referred to HuMab-5B1 as its "lead antibody development program". MabVax public filings between May and August 2016

stated that MabVax was "substantially dependent on the success of our product candidates, HuMab-5B1 and 89ZR-HuMab-5B1".

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 28 because the Court dismissed all related claims with prejudice. To the extent a response is required, Defendants deny the allegations in Paragraph 28, except state that (i) MabVax's HuMab-5B1 antibody was a valuable asset; and (ii) Paragraph 28 purports to selectively quote from MabVax's public filings, to which Defendants refer the Court for their contents.

29.     Defendants constantly issued statements about, and kept themselves constantly informed about, the current status of the company's HuMab-5B1 clinical trials.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 29 because the Court dismissed all related claims with prejudice. To the extent a response is required, Defendants deny the allegations in Paragraph 29, except state that Defendants made certain statements based on their understanding of MabVax's clinical trials.

30.     Because HuMab-5B1 was MabVax's "lead antibody development program", Defendants knew that results from its HuMab-5B1 antibody trial in pancreatic cancer ("Phase 1") were material to investors, including the Plaintiffs. MabVax's consistent release of updates regarding the Phase 1 clinical trials for HuMab-5B1 (for example, MabVax released statements on December 1, 2015, January 28, 2016, March 18, 2016, March 21, 2016, and May 9, 2016) further show Defendants' knowledge regarding Phase 1's materiality to investors, as Phase 1 results directly went to MabVax's ability to continue as a going concern. Without positive Phase 1 data, MabVax would not be able to solicit future investment because MabVax would, in essence, not have a viable product. The success or failure of the Phase 1 trial was paramount to MabVax's success, and any negative results were absolutely material to all investors, including Plaintiffs.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 30 because the Court dismissed all related claims with prejudice.

31.      In fact, as Hansen publicly acknowledged, any results, including interim results, from the Phase 1 trial were material to investors, including Plaintiffs. In an interview with "Stock News Now" on August 22, 2016, which was published on YouTube on September 6, 2016, Hansen stated the following regarding interim results of the Phase 1 trial:

> But we also thought that it was important to give patients and investors and potential partners an early glimpse into what we're seeing, provided that we're seeing something substantial and important, something that we can look back on and say, "yes we validated that". And so we're looking for, somewhere in the third quarter of this year, so not very far away, probably in the month of September, we think we'll have enough patients enrolled in each of those trials to say something about where we are and where we're headed, and ***we think those will be a very important sort of interim milestone***. (emphasis added)

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 31 because the Court dismissed all related claims with prejudice.

32.      Hansen also acknowledged the importance of the results from the Phase 1 trial by causing MabVax to publish them in public filings. In an S-1 filed on August 3, 2016, which was signed by Hansen, MabVax stated the following regarding the Phase 1 results:

> In the dose escalation portion of the trial, patients enrolled have locally advanced or metastatic pancreatic cancer who have failed other therapies. Nine patients treated to date have been observed as tolerating initial dosages of the drug reasonably well. Infusion reactions, which are not uncommon with protein drugs, have been the most frequent adverse events related to drug exposure and have been addressed by slowing the infusion rate. Of the nine patients who have been dosed to date, five have been treated for three or more months and investigator observations have noted stable disease for a subset of those patients.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 32 because the Court dismissed all related claims with prejudice.

33.      As Defendants knew, although the HuMab-5B1 antibody trial Phase 1 results were material to investors, investors without a sophisticated understanding of the science behind

MabVax's antibody program, including Plaintiffs, had no basis to understand whether these results were promising or catastrophic to MabVax's future. Because five of nine patients that had "locally advanced or metastatic pancreatic cancer who ha[d] failed other therapies" were apparently treated for "three or more months" with notations of "stable disease" Plaintiffs believed (and relied on their belief) that the results were positive.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 33 because the Court dismissed all related claims with prejudice.

34.     In a press release published on September 19, 2016, MabVax published further Phase 1 results. Among other things, the press release stated:

> "To date 13 patients, most with stage 3 and 4 metastatic pancreatic cancer, have been enrolled after having exhausted all other standard of care therapies," stated President and CEO J. David Hansen. "Based on assessments conducted with available unaudited data to date from these patients, we are seeing a pharmacokinetic profile for MVT-5873 that is similar to other monoclonal antibody therapeutics. We are actively dosing patients and plan on generating sufficient safety data in this portion of the phase I trial to allow the initiation, during the fourth quarter of this year, of the second part of the phase I trial where MVT-5873 will be administered in front line therapy in combination with a current standard of care chemotherapy".

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 34 because the Court dismissed all related claims with prejudice.

35.     Again, as Defendants knew, although the Phase 1 results were material to investors, ordinary investors, including Plaintiffs, had no basis, other than MabVax's routine positive reporting, to understand whether these results were promising or catastrophic to MabVax's future.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 35 because the Court dismissed all related claims with prejudice.

36.     Thus, Defendants knew that Plaintiffs relied entirely on Defendants' public statements and the analysis of sophisticated institutional investors in determining whether the

Phase 1 results were promising to MabVax's future. Defendants also knew that Plaintiffs' continuing faith, and willingness to invest in MabVax, was predicated on Defendants' representations that the "promising" Phase 1 results were indicative of the future health and profitability of MabVax. It was clear that negative Phase 1 results would cause significant financial hardship for MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 36 because the Court dismissed all related claims with prejudice.

*b. The Oxford Loan*

37.     According to a January 19, 2016 8-K, on January 15, 2016, MabVax and Oxford Finance LLC ("Oxford"), as collateral agent and lender, entered into a Loan and Security Agreement (the "Loan Agreement") providing for senior secured term loans to the Company in an aggregate principal amount of up to $10,000,000, subject to the terms and conditions set forth in the Loan Agreement. Under the Loan Agreement, the Company received an initial loan of $5,000,000.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 37 because the Court dismissed all related claims with prejudice.

38.     In order for MabVax to receive the second tranche of $5,000,000, two conditions needed to be met. *First*, MabVax needed to be listed onto the NASDAQ Stock Market or New York Stock Exchange. *Second*, MabVax needed "***positive interim data on the Phase 1 [trial]***". (*See* Ex. 10.1 to January 19, 2016 8-K.)

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 38 because the Court dismissed all related claims with prejudice.

39.     MabVax's ability to get the second tranche of $5,000,000 would expire on

September 30, 2016.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 39 because the Court dismissed all related claims with prejudice.

40.    Oxford was a sophisticated institutional investor. As explained on Oxford's website:

> For over 20 years, Oxford Finance has enjoyed a reputation for being far more than a lending institution. Our success is founded upon enduring relationships within an industry we know intimately well. Clients and partners alike value our deep expertise, our drive to share success, and the service and flexibility we have provided to hundreds of life sciences and healthcare services companies across the globe. In recent years, Oxford has originated over $6 billion in loans, with credit facilities ranging from $5 million to $150 million.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 40 because the Court dismissed all related claims with prejudice.

41.    For this reason, Plaintiffs eagerly awaited Oxford's decision regarding whether to provide the second tranche of $5,000,000 to MabVax. If Oxford rejected MabVax's request, that would mean, despite MabVax's regular positive reports, that there was not "positive interim data on the Phase 1 trial" – an indictment of MabVax's "lead antibody program" that would be catastrophic for the Company's prospects and ability to get future financing.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 41 because the Court dismissed all related claims with prejudice.

42.    Upon information and belief, Defendants knew that investors, including Plaintiffs, awaited Oxford's decision and were prepared to rely on it in either further investing in MabVax or refusing to invest and instead sell their shares. The Loan Agreement was constantly referenced in MabVax's public filings, which were signed by Hansen, and Hansen in California discussed it publicly (as shown below).

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 42 because the Court dismissed all related claims with prejudice.

43.     On August 17, 2016, the first condition was met – MabVax announced its listing on the NASDAQ Stock Exchange in a public filing. Thus, Plaintiffs, like all of MabVax's investors, understood that if there was "positive interim data on the Phase 1", MabVax would receive the second tranche of $5,000,000 from Oxford.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 43 because the Court dismissed all related claims with prejudice.

c. *MabVax's Financial Future*

44.     Given that MabVax was a "clinical stage" company, the state of its finances was material to investors, including Plaintiffs. Defendants knew that MabVax's finances were material to investors, including Plaintiffs.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 44 because the Court dismissed all related claims with prejudice.

45.     The amount of financing that an early-stage biotechnology company like MabVax had already secured is material to investors because early-stage biotechnology companies, like MabVax, often do not generate any revenue. Thus, companies like MabVax rely on financing to keep them operating until their products are either sold or licensed to other companies or reach the consumer market. Until either of those stages occurs in a biotechnology company's life, it relies on financing. If the company runs out of financing, it will likely cease to exist. Defendants, as experienced executives of a publicly traded early-stage biotechnology company, knew this.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 45 because the Court dismissed all related claims with prejudice.

46.     Crucially, MabVax and Defendants already were representing to investors that the receipt of the second $5,000,000 tranche from Oxford was a sure thing. On or around September 3, 2016, MabVax and Defendants sent out a shareholder letter to the Plaintiffs, among other investors, signed by Hansen in California. Defendants also included a copy of this letter in MabVax's 8-K, filed with the SEC on September 7, 2016. This letter stated unequivocally that MabVax had obtained "*12 months' operating capital to complete Phase 1*". This was a plain and clear reference to the $5,000,000 second tranche from Oxford. The letter also stated that MabVax had in place "all the ingredients required for long-term success and value creation for our stock." Defendants were able to induce further investments, in part, because they falsely claimed to have 12 months of operating capital, thus portraying MabVax as financially healthier than it actually was.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 46 because the Court dismissed all related claims with prejudice.

47.     On September 6, 2016, MabVax filed a presentation with the SEC. As was routinely the case, the presentation was given by Hansen and was attached to an 8-K signed by Hansen in California. Hansen's name was also on the front page of the presentation. In a slide titled "Financial Information and Market Statistics", set forth below, the presentation showed MabVax's "Cap Table". The Cap Table, in turn, stated that MabVax currently had $5,000,000 in debt from Oxford, but that was "Before Second Tranche".

## Financial Information and Market Statistics

| Cap Table (In Mils.) | | |
|---|---|---|
| **Before Financing** | **Pro Forma After Financing** | **Remarks - All Numbers Stated Post-Reverse Split** |
| $ 3.0 | $ 11.4 | Cash and cash equivalents (as of June 30, 2016) |
| $ 1.0 | $ 1.0 | Monthly burn rate |
| $ 5.0 | $ 5.0 | Debt - Oxford Finance LLC Before Second Tranche* |
| 4,235,339 | 5,641,350 | Common stock outstanding |
| - | 324,727 | Most favored nations April 2015 PIPE financing |
| 2,165,190 | 2,165,190 | Common equivalents - Series D Preferred Stock** |
| 450,446 | 519,751 | Common equivalents - Series E Preferred Stock** |
| - | 665,281 | Common equivalents - Series F Preferred Stock** |
| 6,850,975 | 9,316,299 | Total common and common equivalents |
| 1,199,505 | 5,124,144 | Total warrant shares |
| $ 9.87 | $ 6.84 | Average warrant exercise price (expire from Oct. 2017-Jan. 2021) |

**Principal Stockholders:** OPKO/Dr. Phil Frost, others 4.99% voting blockers, RTP Venture Fund

**Market Statistics:**

| | | |
|---|---|---|
| Market Cap: | $ 28,714,472 | Based solely on common stock outstanding |
| Share Price: | $ 5.09 | Closing price on September 2, 2016 |
| Avg. Volume: | 18,690 | Volume on Nasdaq August 19, 2016 |
| Ticker Symbol: | MBVX | Nasdaq Capital Market |

\* Issued Jan 15, 2016, 4-yr term, int. only 1st yr, straight amort. Of principal next 3 yrs
\*\* Series D, E and F Preferred Stock include 4.99% voting blockers, no price resets or look back provisions or special dividends, $0.01 per share liquidation preference



29

September 6, 2016 8-K, Ex. 99.1, Slide 29.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 47 because the Court dismissed all related claims with prejudice.

48.    In an interview with "Stock News Now" on August 22, 2016, which was published on YouTube on September 6, 2016, Hansen (1) acknowledged the importance of MabVax's funding through Phase 1; and (2) stated that MabVax "certainly [could] pull down" the $5,000,000 loan from Oxford, explaining as follows:

> We were able to finalize on 9.4 million dollars [in a recent equity raise], and so for us that's a substantial amount of money. If we combine that with our three million dollars that we had in our bank account at the end of the first quarter that's now 12, ***plus we do have a debt financing arrangement in place with Oxford Finance and we certainly can pull down an additional five million dollars in debt financing here***, we hope in the next short period of time. ***So that would certainly give us more than enough cash to reach our—what are considered to be our most***

*important milestones—which are the end of the phase one clinical trials in the mid-term next year.* (emphasis added)

Also, On September 13, 2016 Hansen caused an 8-K to be filed which included an investor presentation titled, "Immuno-Oncology Products Discovered From the Human Immune Response to Cancer". Under the KEY HIGHLIGHTS section, Hansen stated the following material facts: (1) Uplist and interim data readout triggers $5M in additional debt financing from Oxford Finance, and (2) Pull down expected fourth quarter.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 48 because the Court dismissed all related claims with prejudice.

### d. *Expiration of the Loan and Material Omissions by Defendants Regarding Oxford's Rejection*

49.     In early September 2016, Defendants had an in-person meeting with representatives of Oxford, during which Defendants relayed the current interim data to Oxford and asked that Oxford fund the second tranche. Oxford assessed that data, and on the basis of the data declined to fund the second tranche.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 49 because the Court dismissed all related claims with prejudice.

50.     After September 6, 2016, and before the September 30, 2016, expiration date for the second tranche of the Oxford loan, the Company did not make any public statements regarding their request for the second $5,000,000 tranche from Oxford and Oxford's subsequent denial of such request. During this time, Plaintiffs were under the false belief, due to MabVax's and Defendants' misstatements and omissions, that MabVax would secure the second tranche of $5,000,000 from Oxford. Further, Plaintiffs had no idea that the Phase 1 results were negative, as MabVax and Defendants had only disclosed that material non-public information to Oxford.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 50 because the Court dismissed all related claims with prejudice.

51.     The first new public statement made by the Company regarding Oxford was in a November 7, 2016 10-Q, almost *six weeks* after the expiration date. The Company's November 7, 2016 10-Q, signed by both Defendants, stated simply that:

> [t]he option to fund the second tranche of $5,000,000 . . . was upon the Company achieving positive interim data on the Phase 1 HuMab-5B1 antibody trial in pancreatic cancer and successfully uplisting to either the NASDAQ Stock Market or NYSE MKT on or before September 30, 2016. ***The option for the Term B Loan expired on September 30, 2016.*** The Company is not pursuing completion of any additional debt financing with Oxford Finance, LLC at the present time." In later filings, the Company stated only: "The option for the . . . Loan expired on September 30, 2016. (emphasis added)

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 51 because the Court dismissed all related claims with prejudice.

52.     What MabVax and Defendants materially omitted from this statement was that – as they well knew, since Defendants were the ones who had the communications with Oxford – they had already attempted to secure the second tranche of $5,000,000, and Oxford had denied their request due to insufficient Phase 1 data. It was not until three years later, on or about December 30, 2019, that the Plaintiffs learned in a series of telephone conversations with a banker who worked on the transaction that Defendants ***had indeed requested the second tranche for $5,000,000 and were denied by Oxford due to insufficient data before the expiration date***. Further, upon information and belief, Oxford received data from MabVax not available to the public, including Plaintiffs, and based on this data, still refused to provide the second tranche of $5,000,000.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 52 because the Court dismissed all related claims with prejudice.

53.     MabVax and Defendants were fully aware of but intentionally omitted Oxford's rejection because they knew that any kind of "bad press" would be disastrous to MabVax's ability

to raise future funding given its status as an early-stage biotechnology company. A sophisticated investor like Oxford rejecting the data on MabVax's "lead antibody development program" would be just that. Despite the positive reports in MabVax's public filings, Oxford clearly did not agree that there was "positive interim data" sufficient to provide the funding.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 53 because the Court dismissed all related claims with prejudice.

54.     MabVax and Defendants knew that this information was material to investors. Moreover, MabVax's and Defendants' statement that the loan "expired" was clearly directed to, and did, mislead investors, including Plaintiffs, to believe that MabVax was not rejected. Plaintiffs, like other investors, were led to believe that Oxford did not reject MabVax. ***This was not the case***. As Defendants well knew, but as the Plaintiffs learned only later, a request ***was*** made and ***was*** rejected. Plaintiffs had a right to know this material information, and Defendants and MabVax purposely withheld it.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 54 because the Court dismissed all related claims with prejudice.

55.     After this point, and deprived of such knowledge by MabVax and Defendants, Plaintiffs were induced by MabVax and Defendants into investing significantly more in MabVax. Plaintiffs would not have made any of the following additional investments had they known that MabVax requested funding from Oxford and was denied due to insufficient data:

| Plaintiff/Investor | Amount | Date |
|---|---|---|
| GRQ Consultants, Inc. Roth 401k FBO Barry Honig | $500,000 | 5/5/2017 |
| GRQ Consultants, Inc. Roth 401k FBO Renee Honig | $100,000 | 5/15/2017 |
| Robert S. Colman Trust UDT 3/13/85 | $49,999.25 | 5/16/2017 |
| HSCI | $500,000 | 5/19/2017 |
| GRQ Consultants, Inc. 401k | $300,000 | 8/16/2017 |
| HSCI | $350,000 | 8/16/2017 |
| HSCI | $400,000 | 9/12/2017 |

| HSCI | $600,000 | 9/25/2017 |
| GRQ Consultants, Inc. 401k | $500,000 | 10/11/2017 |
| GRQ Consultants, Inc. Roth 401k FBO Renee Honig | $1,150,000 | 2/1/2018 |
| Robert S. Colman Trust UDT 3/13/85 | $100,000.50 | 2/5/2018 |
| GRQ Consultants, Inc. Roth 401k FBO Barry Honig | $100,000 | 2/8/2018 |
| Robert S. Colman Trust UDT 3/13/85 | $40,000 | 5/2/2018 |
| GRQ Consultants, Inc. Roth 401k FBO Renee Honig | $300,000 | 5/8/2018 |

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 55 because the Court dismissed all related claims with prejudice.

56.     Plaintiffs' investments in May 2017 were made pursuant to a publicly filed S-1 with the SEC, which was signed by both Hansen and Hanson in California on May 12, 2017 (the "May 12, 2017 S-1").

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 56 because the Court dismissed all related claims with prejudice.

57.     The May 12, 2017 S-1 omitted material information that induced the Plaintiffs to invest. Regarding the Oxford Loan Agreement, Defendants caused MabVax's May 12, 2017 S-1 to state only the following:

> Effective in January 2016, we entered into a $10 million loan and security agreement with Oxford Finance LLC, or Oxford Finance, that is secured by a lien covering substantially all of our assets, excluding intellectual property. As of December 31, 2016, we had an outstanding principal balance of $5 million. ***The option to draw the second $5 million expired on September 30, 2016***.

May 12, 2017 S-1 at 7 (emphasis added).

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 57 because the Court dismissed all related claims with prejudice.

58.     This statement materially omitted that MabVax and Defendants had **requested** the second $5 million tranche from Oxford and Oxford **rejected** the request due to MabVax's

insufficient Phase 1 data.[5] Instead, as MabVax and Defendants must have known, this statement led Plaintiffs to believe that Oxford had not rejected Defendants' request and created that illusion that the Phase 1 data was positive.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 58 and Footnote 5 because the Court dismissed all related claims with prejudice.

59.     Had MabVax and Defendants not materially omitted that information, Plaintiffs would not have invested.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 59 because the Court dismissed all related claims with prejudice.

60.     Plaintiffs' investments in September and October 2017 were made pursuant to publicly filed prospectus supplements, which Defendants caused MabVax to file on September 13, 2017 (the "September 13, 2017 Prospectus Supplement") and October 11, 2017 (the "October 11, 2017 Prospectus Supplement"), and an S-3 signed by both Defendants which MabVax filed on July 14, 2017 (the "July 14, 2017 S-3") and which incorporated several publicly filed documents by reference.

---

[5] Defendants caused MabVax to state the same information in several sections of the May 12, 2017 S-1: "**Oxford Loan** – On January 15, 2016, we entered into a loan and security agreement with Oxford Finance LLC (the 'Load [sic] and Security Agreement') providing for senior secured term loans to us in the aggregate principal amount of up to $10,000,000. On January 15, 2016, we received an initial loan of $5,000,000 under the Loan and Security Agreement. ***The option to draw the second $5,000,000 expired on September 30, 2016.***" (May 12, 2017 S-1 at 36) (emphasis added).

"On January 15, 2016, we entered into a loan and security agreement with Oxford Finance LLC pursuant to which we had the option to borrow $10,000,000 in two equal tranches of $5,000,000 each (the 'Loan Agreement'). The first tranche of $5,000,000 was funded at close on January 15, 2016 (the 'Term A Loan'). The option to fund the second tranche of $5,000,000 (the 'Term B Loan') was upon the Company achieving positive interim data on the Phase 1 HuMab-5B1 antibody trial in pancreatic cancer and successfully uplisting to either the NASDAQ Capital Market or NYSE MKT on or before September 30, 2016. ***The option for the Term B Loan expired on September 30, 2016.***" (May 12, 2017 S-1 at F-14) (emphasis added).

"On January 15, 2016, we entered into a loan and security agreement with Oxford Finance LLC pursuant to which we had the option to borrow $10,000,000 in two equal tranches of $5,000,000 each (the 'Loan Agreement'). The first tranche of $5,000,000 was funded at close on January 15, 2016 (the 'Term A Loan'). The option to fund the second tranche of $5,000,000 (the 'Term B Loan') was upon the Company achieving positive interim data on the Phase 1 HuMab-5B1 antibody trial in pancreatic cancer and successfully uplisting to either the NASDAQ Capital Market or NYSE MKT on or before September 30, 2016. **The option for the Term B Loan expired on September 30, 2016.**" (May 12, 2017 S-1 at F-14) (emphasis added).

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 60 because the Court dismissed all related claims with prejudice.

61.   The September 13, 2017 Prospectus Supplement omitted material information that caused the Plaintiffs to invest. Regarding the Oxford Loan Agreement, Defendants caused MabVax's September 13, 2017 Prospectus Supplement to state only the following:

Effective in January 2016, we entered into a $10 million loan and security agreement with Oxford Finance LLC, or Oxford Finance, that is secured by a lien covering substantially all of our assets, excluding intellectual property. As of December 31, 2016, we had an outstanding principal balance of $5 million. **The option to draw the second $5 million expired on September 30, 2016.**

September 13, 2017 Prospectus Supplement at S-6 (emphasis added).

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 61 because the Court dismissed all related claims with prejudice.

62.   This statement materially omitted that MabVax and Defendants had **requested** the second $5 million tranche from Oxford and were **rejected** due to MabVax's insufficient Phase 1 data. Instead, as MabVax and Defendants must have known, this statement led Plaintiffs to believe that Defendants had not been rejected and that the Phase 1 data was positive.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 62 because the Court dismissed all related claims with prejudice.

63.   Had MabVax and Defendants not materially omitted that information, Plaintiffs

would not have invested.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 63 because the Court dismissed all related claims with prejudice.

64. Similarly, the October 11, 2017 Prospectus Supplement omitted material information that caused the Plaintiffs to invest. Regarding the Oxford Loan Agreement, Defendants caused MabVax's October 11, 2017 Prospectus Supplement to state only the following:

> Effective in January 2016, we entered into a $10 million loan and security agreement with Oxford Finance LLC, or Oxford Finance, that is secured by a lien covering substantially all of our assets, excluding intellectual property. As of December 31, 2016, we had an outstanding principal balance of $5 million. ***The option to draw the second $5 million expired on September 30, 2016.***

October 11, 2017 Prospectus Supplement at S-6 (emphasis added).

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 64 because the Court dismissed all related claims with prejudice.

65. This statement also materially omitted that MabVax and Defendants had ***requested*** $5 million from Oxford and were ***rejected*** due to MabVax's insufficient Phase 1 data. Instead, as MabVax and Defendants must have known, this statement led Plaintiffs to believe that Oxford had not rejected MabVax's request.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 65 because the Court dismissed all related claims with prejudice.

66. Had MabVax and Defendants not materially omitted that information, Plaintiffs would not have invested.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 66 because the Court dismissed all related claims with prejudice.

67. The July 14, 2017 S-3, which was signed by both Hansen and Hanson in California,

states explicitly that MabVax "filed with the Securities and Exchange Commission, and incorporate by reference" several filings, including MabVax's Annual Report on Form 10-K for the fiscal year ended December 31, 2016, which was filed on March 1, 2017. That 10-K, which was signed by both Defendants, states, regarding the Oxford Loan Agreement, that:

> [e]ffective in January 2016, we entered into a $10 million loan and security agreement with Oxford Finance LLC, or Oxford Finance, that is secured by a lien covering substantially all of our assets, excluding intellectual property. As of December 31, 2016, we had an outstanding principal balance of $5 million. ***The option to draw the second $5,000,000 expired on September 30, 2016.***

March 1, 2017 10-K at 11 (emphasis added).

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 67 because the Court dismissed all related claims with prejudice.

68.   This statement, just like the others, materially omitted that MabVax and Defendants had ***requested*** $5 million from Oxford and were ***rejected*** due to MabVax's insufficient Phase 1 data. Instead, as MabVax and Defendants must have known, this statement led Plaintiffs to believe that Oxford had not rejected Defendants' request.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 68 because the Court dismissed all related claims with prejudice.

69.   Had MabVax and Defendants not materially omitted that information, Plaintiffs would not have invested.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 69 because the Court dismissed all related claims with prejudice.

70.   Further, MabVax's material omission that Oxford had rejected its request for $5 million is directly and causally related to MabVax's bankruptcy and Plaintiffs' loss. The fact that the Phase 1 results were not sufficient to secure the second phase of the Oxford loan demonstrates that MabVax was nowhere near creating a viable product and would be unable to attract further

investments, which was critical for MabVax's very survival. MabVax and Defendants materially omitted this information, which ultimately led to its bankruptcy. Had MabVax and Defendants not omitted this highly material information from Plaintiffs, they never would have invested in MabVax. MabVax's and Defendants' omission that their second loan request had been rejected by Oxford pertained to the very risk that was concealed by this omission. In other words, Defendants' omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 70 because the Court dismissed all related claims with prejudice.

71.    MabVax's situation in 2017 was financially precarious. If MabVax had not obtained outside funding from Plaintiffs, the company would have collapsed and Defendants likely would have lost their jobs.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 71 because the Court dismissed all related claims with prejudice.

72.    In 2017, while MabVax's ability to continue as a going concern was in question from month-to-month, Defendants used shareholders' money, including Plaintiffs', to cause MabVax to compensate them over ***$3 million*** \endital\||in salary, bonus, equity, and other compensation. MabVax would not have had the funds to pay Defendants this exorbitant compensation had it and Defendants not withheld material information in order to induce Plaintiffs to make investments during 2017:

| 2017 EXECUTIVE COMPENSATION | | | | | |
|---|---|---|---|---|---|
| **Name** | **Salary** | **Stock** | **Options** | **Other Comp** | **Total** |
| J. David Hansen | $427,876 | $448,500 | $1,252,905 | $36,634 | $2,165,915 |
| Gregory P. Hanson | $309,312 | $277,016 | $224,945 | $36,928 | $848,201 |

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 72 because the Court dismissed all related claims with prejudice.

## II.    Defendants' Lies and Tortious Interference with Contract Related to Management

### a. *April 2007*

73.    In April of 2017, Plaintiffs were considering investing further into MabVax. Defendants' employment agreements were set to terminate on July 1, 2017. With that deadline in mind, in a phone call with Honig and Stetson on April 27, 2017, MabVax and the Defendants privately promised that the Defendants would take pay cuts in renewed employment agreements. As Defendants knew, Mr. Colman was aware of this promise. In an email on April 27, 2017, Hansen laid out the 2017 budget, stating where they could eliminate other costs and defer payments.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 73 because the Court dismissed all related claims with prejudice.

74.    In reliance on that promise, Plaintiffs made the following investments in May of 2017.

| Plaintiff/Investor | Amount | Date |
|---|---|---|
| GRQ Consultants, Inc. Roth 401k FBO Barry Honig | $500,000 | 5/5/2017 |
| GRQ Consultants, Inc. Roth 401k FBO Renee Honig | $100,000 | 5/15/2017 |
| Robert S. Colman Trust UDT 3/13/85 | $49,999.25 | 5/16/2017 |
| HSCI | $500,000 | 5/19/2017 |

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 74 because the Court dismissed all related claims with prejudice.

75.    Defendants breached their promises, and caused MabVax to breach its promise, to Plaintiffs because they knew at the time that they made this promise that they would not be taking any pay cuts.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 75 because the Court dismissed all related claims with prejudice.

76.     Just two months later, on July 3, 2017, the Defendants had MabVax announce in an 8-K, signed by Hansen in California, that they extended their lavish employment agreements on nearly identical terms to their previous employment agreements:

> [o]n July 1, 2017, MabVax Therapeutics Holdings, Inc. ('Company') entered into renewed employment agreements with each of J. David Hansen, its Chairman, President and Chief Executive Officer, Paul W. Maffuid, Ph.D., its Executive Vice President of Research and Development, and Gregory P. Hanson, CMA, MBA, its Chief Financial Officer (the 'Employment Agreements'). The principal purpose of each of the Employment Agreements was to extend the term of each of Mr. Hansen's, Dr. Maffuid's and Mr. Hanson's (the 'Executives') employment through July 1, 2020 as previously entered into employment agreements terminated or will terminate on July 1, 2017, July 21, 2017 and July 1, 2017, respectively. These agreements supersede and replace the Employment Agreements between the Company and each of Mr. Hansen and Mr. Hanson dated July 1, 2014 and the Employment Agreement between the Company and Dr. Maffuid dated July 21, 2014 (the 'Prior Agreements') and contain substantially the same terms as the Prior Agreements except as set forth below.

> 1July 3, 2017 8-K at 2.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 76 because the Court dismissed all related claims with prejudice.

77.     There were no material pay cuts: According to the July 3, 2017 8-K, Hansen's base salary was set at $430,000, with bonus eligibility "[u]p to 50% of Base Salary", and Hanson's base salary was set at $310,000, with bonus eligibility "[u]p to 50% of Base Salary". According to an April 2, 2018 10-K, Hansen's base salary in 2016 was $418,438, and Hanson's base salary was $276,014. The April 2, 2018 10-K further shows that Defendants received these full amounts. Hansen's base salary for fiscal year 2017 was $427,876. Hanson's base salary for fiscal year 2017 was $309,312. *See* April 2, 2018 10-K at 52.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 77 because the Court dismissed all related claims with prejudice.

78.     On July 3, 2017, Stetson emailed Hansen: "I was surprised to see this filing. It was my understanding that there were going to be pay cuts until the company was fully funded." Hansen responded the next day, cc'ing Hanson, and did not deny that those cuts were discussed. Instead, Hansen stated:

> Management agreements expired July 1. If either the employee or the company did not renew, then the whole management team is terminated and severance compensation kicks in. Management is meeting weekly with the board to discuss all expense forecasts and capital raising efforts. The board is monitoring all compensation and related expenses closely.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 78 because the Court dismissed all related claims with prejudice.

79.     Because Stetson was told that management was still discussing expenses and the board was monitoring compensation, it was unclear whether and at what point the pay cuts would happen.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 79 because the Court dismissed all related claims with prejudice.

*b. August 2017*

80.     Later, in an August 8, 2017 Letter Agreement between MabVax and HSCI, HSCI "consent[ed] to and agree[d] that the Company may sell and investors shall purchase an aggregate of up to $2,350,000 securities of the Company in a registered direct offering."

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 80 because the Court dismissed all related claims with prejudice.

81.     The deal, at the request of investors, including Plaintiffs, included a provision whereby the employment terms of all management would be reduced from three years to two years.

Moreover, management would defer material portions of their salaries for the remainder of the year. In Section E, the August 8, 2017 Letter Agreement stated:

> The employment terms of all management shall be reduced to two years from three years. Management shall defer portions of their salary for the remainder of the year, which shall be paid upon the earlier of completion of the $8,000,000 Financing or a business transaction that represents, or transactions in the aggregate that represent, in excess of $10,000,000.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 81 because the Court dismissed all related claims with prejudice.

82.     In August of 2017, based on that Letter Agreement and Defendants' promises to reduce their employment terms and defer material portions of their salaries, Plaintiffs made the following investments:

| Plaintiff/Investor | Amount | Date |
|---|---|---|
| GRQ Consultants, Inc. 401k | $300,000 | 8/16/2017 |
| HSCI | $350,000 | 8/16/2017 |

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 82 because the Court dismissed all related claims with prejudice.

83.     Even though MabVax received the funding, upon information and belief, Defendants again forced MabVax to breach those promises — Defendants never reduced their management term length or deferred portions of their salaries. According to the April 2, 2018 10¬K, Defendants' salaries were nearly identical to those presented in the July 3, 2017 8-K. In the July 3, 2017 8-K Hansen's base salary was set at $430,000. According to the April 2, 2018 10-K, he received $427,876 in fiscal year 2017, with $448,5000 RSUs, $1,252,905 options, and $36,634 of "Other Compensation". In the July 3, 2017 8-K, Hanson's base salary was set at $310,000. According to the April 2, 2018 10-K, Hanson received $309,312, with $277,016 RSUs, $224,945 options and $36,928 in "Other Compensation". There was no material deferral of salaries.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 83 because the Court dismissed all related claims with prejudice.

84.     Defendants, with full control of MabVax, forced MabVax to breach the terms of the August 8, 2017 Letter Agreement as part of their scheme to continue extracting as much compensation and other benefits as possible from their roles as executives of MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 84 because the Court dismissed all related claims with prejudice.

### III.    Defendant's Misrepresentations and Omissions Concerning Progress of MabVax's Phase 1 HuMab-5B Antibody Trials

85.     Defendants caused MabVax to issue misleading press releases concerning the progress of the company's Phase 1 HuMab-5B Antibody trials. As explained previously, the HuMab-5B antibody was MabVax's key asset, on which the Company's prospects heavily relied. Failure of the Phase 1 HuMab-5B Antibody trials was likely to impair Hansen's ability to raise capital to continue funding MabVax and his excessive personal compensation.

**ANSWER:** Defendants deny the allegations in Paragraph 85, except state that MabVax's HuMab-5B antibody was a valuable asset.

86.     MabVax's situation throughout 2018 was financially precarious. MabVax needed outside funding to stave off collapse; otherwise, Defendants likely would have lost their jobs.

**ANSWER:** Defendants deny the allegations in Paragraph 86, except state that MabVax, as a clinical-stage biotechnology company, needed financing to remain a going concern.

87.     Upon information and belief, on or about February 12, 2018, MabVax suspended patient enrollment in its Phase 1 HuMab-5B Antibody trials due to an "adverse event" involving a trial participant. Hanson and Hansen were both personally informed by other MabVax employees and/or the clinical personnel conducting and overseeing the trials that patient enrollment in the

trial was being suspended. But MabVax and Defendants did not timely disclose that MabVax had suspended enrollment in its Phase 1 trials or the "adverse event."

**ANSWER:** Defendants deny the allegations in Paragraph 87.

88.    In fact, MabVax's and Defendants' first public acknowledgment that anything was wrong with their Phase 1 trials appeared in MabVax's Form 10-Q for the first quarter of 2018, which was signed by both Defendants and which was filed extremely late – not until ***October 15, 2018***. There, MabVax and Defendants acknowledged the following:

> On February 12, 2018, we reported on interim results of the current cohort of the Phase 1 study, in which MVT-5873 was given in combination with nab-paclitaxel and gemcitabine to patients newly diagnosed with CA19-9 positive pancreatic cancer. MVT-5873 at a dose of 0.125 mg/kg when added to first-line chemotherapy was generally well tolerated by all subjects. At that time, all six patients in the current cohort demonstrated measurable tumor reductions, with four patients meeting the criteria for partial response (PR) and two patients meeting the criteria for stable disease (SD). We believe these results further confirm results reported on a portion of the cohort in late 2017. Patient CA19-9 levels, which are a prognostic indicator of the disease state, were markedly reduced in all subjects with this combination therapy. ***Due to adverse events potentially related to the combination of nab-paclitaxel, gemcitabine and MVT-5873, not seen in the monotherapy clinical study, the Company has suspended patient enrollment at the current dose.*** We are evaluating plans to enroll additional patients at a lower dose to further explore safety and response in a larger population. (emphasis added)

**ANSWER:** Defendants deny the allegations in Paragraph 88, except state that Paragraph 88 purports to selectively quote and characterize a MabVax SEC filing, to which Defendants refer the Court for its contents.

89.    Despite the suspension of enrollment in their Phase 1 trials, purportedly in February 2018, Defendants continued to paint a misleadingly rosy picture of the progress of the trials in press releases upon which Defendants knew that investors (including Plaintiffs) would rely. Defendants knew that the picture they were painting was in conflict with the reality.

**ANSWER:** Defendants deny the allegations in Paragraph 89.

90.    For example, on February 6, 2018, MabVax and Defendants issued a press release

announcing a private placement securities offering. This press release quoted Defendant Hansen as stating, "Our clinical trial of MVT-5873 [HuMab-5B1] in combination with chemotherapy has continued to yield encouraging results. . . . Therefore, we intend to allocate a portion of the funds raised to continue patient enrollment at the current treatment level to continue to confirm results seen to date." MabVax and Defendants omitted from this press release the material information, which they well knew, that due to an "adverse event", enrollment in these clinical trials had been suspended.

**ANSWER:** Defendants deny the allegations in Paragraph 90, except state that Paragraph 90 purports to selectively quote from a MabVax press release, to which Defendants refer the Court for its contents.

91.     On April 2, 2018, MabVax and Defendants issued a press release reporting operational and financial results. This press release quoted Defendant Hansen as stating "We have made notable progress with our MVT-5873 [HuMab-5B1] and MVT-1075 clinical programs and are very encouraged with the positive data we have seen to date. We look forward to continuing enrollment in each program and participating in key scientific conferences over the course of 2018[.]" MabVax and Defendants omitted from this press release the material information, which they well knew, that due to an "adverse event," enrollment in these clinical trials had been suspended.

**ANSWER:** Defendants deny the allegations in Paragraph 91, except state that Paragraph 91 purports to selectively quote and characterize a MabVax press release, to which Defendants refer the Court for its contents.

92.     On May 3, 2018, MabVax and Defendants issued a press release announcing a private placement securities offering. This press release quoted Defendant Hansen as stating:

MabVax intends to use the net proceeds of the offering to fund continuing clinical developments of hits HuMab 5B1 antibody designated MVT-5873 in combination with gemcitabine and nab-paclitaxal in first line therapy for the treatment of patients newly diagnosed with pancreatic cancer. The Company has treated two cohorts of patients for a total of six patients to date in this study; and these funds will enable the Company to continue enrolling up to approximately 10 additional patients with the objective of confirming early observations.

**ANSWER:** Defendants deny the allegations in Paragraph 92, except state that Paragraph 92 purports to selectively quote and characterize a certain MabVax press release, to which Defendants refer the Court for its contents.

93.     MabVax and Defendants omitted from this press release the material information, which they well knew, that, upon information and belief, due to an "adverse event", enrollment in these clinical trials had been suspended.

**ANSWER:** Defendants deny the allegations in Paragraph 93.

94.     At no point before October 15, 2018 did MabVax and Defendants acknowledge in an 8-K or otherwise that patient enrollment had been suspended and that an "adverse event" had occurred.

**ANSWER:** Defendants deny the allegations in Paragraph 94.

95.     During this period, MabVax and Defendants were soliciting Plaintiffs, including Honig and Colman, for investments. Plaintiffs believed, as was represented to them, that their investments would be used to fund the Phase 1 trials. Instead, the investments were used to fund Defendants' compensation.

**ANSWER:**   Defendants deny the allegations in Paragraph 95, except state that (i) Defendants at times spoke with members of Plaintiffs' illegal investor group about investing in MabVax; and (ii) Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' beliefs and deny the allegations on that basis.

96.     Based upon these misrepresentations and omissions, Plaintiffs made the following equity investments in MabVax:

| Plaintiff/Investor | Amount | Date |
|---|---|---|
| GRQ Consultants, Inc. Roth 401k FBO Renee Honig | $1,150,000 | 2/1/2018 |
| Robert S. Colman Trust UDT 3/13/85 | $100,000.50 | 2/5/2018 |
| GRQ Consultants, Inc. Roth 401k FBO Barry Honig | $100,000 | 2/8/2018 |
| Robert S. Colman Trust UDT 3/13/85 | $40,000.00 | 5/2/2018 |
| GRQ Consultants, Inc. Roth 401k FBO Renee Honig | $300,000 | 5/8/2018 |

**ANSWER:**  Defendants deny the allegations in Paragraph 96, except state that members of Plaintiffs' illegal investor group invested in MabVax.

97.     Further, had Plaintiffs known the truth about MabVax's and Defendants' material misrepresentations and omissions in MabVax's SEC filings, they would never have made those investments in MabVax. MabVax is now in bankruptcy, and its stock is worthless.

**ANSWER:**  Defendants deny the allegations in Paragraph 97, except state that MabVax is in bankruptcy.

98.     MabVax's and Defendants' material misrepresentations and omissions not only induced Plaintiffs' investments, but they also are directly and causally connected to Plaintiffs' losses. The fact that the Phase 1 trial was not going well, as represented by MabVax and Defendants, but had in fact been suspended due to an adverse event directly and negatively affected MabVax's ability to continue soliciting the funds in needed to continue as a going concern. This ultimately was the cause of MabVax's bankruptcy and Plaintiffs' injury. MabVax's and Defendants' misstatements and omissions pertained to the very risk that was concealed by their misrepresentations and omissions—that MabVax would fail. In other words, MabVax's and Defendants' misstatements and omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:**  Defendants deny the allegations in Paragraph 98.

<u>**COUNT I**</u>

**Violations of Sections 25400(d) and 25500 of the California Corporations Code
Against All Defendants**

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-98 above, and further allege:

**ANSWER:** Defendants repeat and incorporate by reference each response set forth above.

99.    This claim is asserted against the Defendants on behalf of Plaintiffs, who each purchased MabVax securities throughout 2017 and 2018.

**ANSWER:**  Defendants deny the allegations in Paragraph 99, except state that Paragraph 99 purports to characterize Plaintiffs' claims, to which no response is required.

100.    Defendants willfully carried out a plan, scheme, and course of conduct that was intended to and did deceive Plaintiffs, investors in MabVax, as alleged in this Complaint.

**ANSWER:**  Defendants deny the allegations in Paragraph 100.

101.    Defendants made or materially participated in the act of making statements that, at the time and in the light of the circumstances under which they was made, were false and misleading with respect to a material fact, or omitted to state material facts necessary in order to make their statements, in the light of the circumstances under which they were made, not misleading, with the purpose of inducing Plaintiffs to purchase MabVax securities that Defendants were selling.

**ANSWER:**  Defendants deny the allegations in Paragraph 101.

102.    This claim is based on Defendants' materially misleading statements or omissions regarding the following:

(a)    that Oxford had rejected MabVax's request for an additional $5,000,000 based on

insufficient Phase I data;

(b)      that patient enrollment in the Phase 1 HuMab-5B Antibody trials had been suspended due to an "adverse event."

**ANSWER:**  Defendants deny the allegations in Paragraph 102, except state that Paragraph 102 purports to characterize Plaintiffs' claims, to which no response is required.

103.    All of these statements and omissions, and many other communications, were made by Defendants in California, at the headquarters of MabVax.

**ANSWER:**  Defendants deny the allegations in Paragraph 103.

104.    Defendants knew, or had reasonable grounds to believe, that their misstatements and omissions were false and misleading.

**ANSWER:**  Defendants deny the allegations in Paragraph 104.

105.    Defendants, with the willful intent to defraud, intended that that their misstatements and omissions had the unlawful purpose of inducing Plaintiffs into purchasing securities. The Defendants had actual knowledge that Plaintiffs would not invest if they were told the truth of any one of the above statements.

**ANSWER:**  Defendants deny the allegations in Paragraph 105.

106.    The Defendants were top officers and controlling persons of MabVax, and had direct involvement in its day-to-day operations. The material omissions from MabVax's public written and verbal solicitations that were made to Plaintiffs in connection with the investments was the collective action of the Defendants. The Defendants were each involved in drafting, producing, reviewing, and/or disseminating the documents at issue in this action and made verbal representations to the Plaintiffs as well.

**ANSWER:**   Defendants deny the allegations in Paragraph 106, except state that Defendants were MabVax officers.

107.    The Defendants had actual knowledge (or were reckless in disregarding) the misrepresentations and omissions of material facts set forth in this Complaint. The Defendants' material misrepresentations and omissions were done knowingly and/or recklessly and for the purpose and effect of concealing information from the solicited investors in order to secure their investments. MabVax and Defendants were aware of (or had ready access to) the very facts regarding the Oxford Loan and the phase I clinical trial that they misrepresented and misleadingly omitted.

**ANSWER:**  Defendants deny the allegations in Paragraph 107.

108.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, and in reliance on that information, the Plaintiffs invested in the above investments. Plaintiffs would not have made their investments and suffered the economic loss associated with making their investment into MabVax had the true information been disclosed. Plaintiffs would not have purchased MabVax shares, including at the prices they paid, or at all, had they been aware of Defendants' fraudulent course of conduct. Further, Defendants' misstatements and omissions directly caused Plaintiffs' losses because the material misrepresentations and omissions were pertinent to circumstances that ultimately caused MabVax to enter bankruptcy thereby damaging Plaintiffs.

**ANSWER:**  Defendants deny the allegations in Paragraph 108.

109.    Defendants' misstatements and omissions pertained to the very risk that was concealed by their misrepresentations and omissions. Defendants' misstatements and omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the

materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:** Defendants deny the allegations in Paragraph 109.

110. As a direct and proximate result of the wrongful conduct of the Defendants, Plaintiffs suffered damages in connection with their investments, and their loss was directly and proximately caused by Defendants' wrongful conduct.

**ANSWER:** Defendants deny the allegations in Paragraph 110, except state that Paragraph 110 states a legal conclusion to which no response is required.

## COUNT II
### Violations of Sections 25504 and 25504.1 of the California Corporations Code based on MabVax's violation of Sections 25401 and 25501 Against All Defendants

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-110 above, and further allege:

**ANSWER:** Defendants repeat and incorporate by reference each response set forth above.

111. This claim is asserted against the Defendants on behalf of Plaintiffs, who each purchased MabVax securities throughout 2017 and 2018.

**ANSWER:** Defendants deny the allegations in Paragraph 111, except state that Paragraph 111 purports to characterize Plaintiffs' claims, to which no response is required.

112. This claim is based on MabVax's and Defendants' materially misleading statements or omissions regarding the following:

(a) that Oxford had rejected MabVax's request for an additional $5,000,000 based on insufficient Phase I data;

(b) that patient enrollment in the Phase 1 HuMab-5B Antibody trials had been suspended due to an "adverse event."

**ANSWER:** Defendants deny the allegations in Paragraph 112, except state that Paragraph 112 purports to characterize Plaintiffs' claims, to which no response is required.

113.    All of these statements and omissions, and many other communications, were made by MabVax and Defendants in California, at the headquarters of MabVax.

**ANSWER:**    Defendants deny the allegations in Paragraph 113, except state that Defendants often communicated in and from California.

114.    By virtue of their high-level positions within MabVax, participation in and awareness of MabVax's operations, direct involvement in the day-to-day operations of MabVax, and communications with MabVax's investors, the Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of MabVax, including the content and dissemination of statements and omissions by MabVax.

**ANSWER:**    Defendants deny the allegations in Paragraph 114, except state that Defendants made many decisions in their capacities as MabVax officers.

115.    The statements and omissions by MabVax set forth above were primary violations by MabVax of Section 25401 of the California Corporations Code, creating liability under Section 25501, because MabVax, from and in California, sold and offered to sell securities to Plaintiffs by means of those material misrepresentations and omissions.

**ANSWER:**    Defendants deny the allegations in Paragraph 115, except state that (i) Paragraph 115 states a legal conclusion to which no response is required; and (ii) Paragraph 115 purports to characterize Plaintiffs' claims, to which no response is required.

116.    The Defendants are liable under Section 25504 of the California Corporations Code because MabVax is liable under Section 25501 of the Code for its violations of Section 25401 of the Code, and both Defendants controlled MabVax. Further, Hansen was a principal executive officer and a director of MabVax. Both Defendants materially aided in the acts and transactions of MabVax constituting the violations of Section 25401.

**ANSWER:** Defendants deny the allegations in Paragraph 116, except state (i) Paragraph 116 states a legal conclusion to which no response is required; (ii) Paragraph 116 purports to characterize Plaintiffs' claims, to which no response is required; and (iii) Hansen was an officer and director of MabVax.

117.    The Defendants also are liable under Section 25504.1 of the California Corporations Code because MabVax is liable under Section 25501 of the Code for its violations of Section 25401 of the Code, and both Defendants materially assisted MabVax in those violations, and had the intent to deceive or defraud.

**ANSWER:**   Defendants deny the allegations in Paragraph 117, except state that (i) Paragraph 117 states a legal conclusion to which no response is required; and (ii) Paragraph 117 purports to characterize Plaintiffs' claims, to which no response is required.

118.    Each of the Defendants had access to the MabVax's public filings and had the ability to prevent the issuance of the false statements and material omission or cause such misleading statements and omissions to be corrected.

**ANSWER:**   Defendants deny the allegations in Paragraph 118, except state that Defendants had access to MabVax's public filings.

119.    Hansen and Hanson signed the various SEC filings at issue containing material misrepresentations and omissions in California. MabVax issued the SEC filings at issue containing material and misrepresentations and omissions from its headquarters in California.

**ANSWER:** Defendants deny the allegations in Paragraph 119.

120.    Both Defendants retained significant managerial power in MabVax. Defendants regularly negotiated contracts with Plaintiffs on MabVax's behalf, explained MabVax's corporate strategy to Plaintiffs, solicited investors on MabVax's behalf, hired and fired employees, and

discussed potential board members. In short, Defendants directly controlled MabVax and materially aided and assisted MabVax in the conduct that gives rise to this cause of action (and every cause of action in this Complaint).

**ANSWER:** Defendants deny the allegations in Paragraph 120, except state that Defendants took many actions in their capacities as MabVax officers.

121.    MabVax and Defendants made untrue statements of material facts and omitted to state material facts that were necessary to make those statements, in the light of the circumstances under which the statements were made, not misleading. These false and misleading statements and omissions were contained in MabVax's public written statements and its verbal solicitations to Plaintiffs in connection with their investments. The Defendants were each involved in drafting, producing, reviewing, and/or disseminating the documents at issue in this action. Most of the statements at issue were expressly attributed to the Defendants. Defendants also made materially false or misleading verbal representations to the Plaintiffs.

**ANSWER:** Defendants deny the allegations in Paragraph 121, except state that Defendants were involved in the creation and/or dissemination of certain MabVax documents.

122.    MabVax and Defendants knew (or were reckless in disregarding) that at the time they were inducing Plaintiffs to invest in MabVax that they were making material misrepresentations and omitting material facts regarding the Oxford Loan and the Phase 1 clinical trials. MabVax and Defendants were aware of (or had ready access to) the very facts that they misrepresented and misleadingly omitted.

**ANSWER:** Defendants deny the allegations in Paragraph 122.

123.    MabVax and Defendants intended that Plaintiffs would rely on Defendants' material misrepresentations and omissions and invest in MabVax.

**ANSWER:** Defendants deny the allegations in Paragraph 123.

124.   In reliance and as a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the Plaintiffs invested in the above investments. Plaintiffs would not have made their investments and suffered the economic loss associated with making their investment into MabVax had the true information been disclosed. Plaintiffs' reliance upon these statements was reasonable. Further, Defendants' material misstatements and omissions directly caused Plaintiffs' loss.

**ANSWER:** Defendants deny the allegations in Paragraph 124, except state that Paragraph 124 states a legal conclusion to which no response is required.

125.   Defendants' misstatements and omissions pertained to the very risk that was concealed by their misrepresentations and omissions. Defendants' misstatements and omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:** Defendants deny the allegations in Paragraph 125, except state that Paragraph 125 states a legal conclusion to which no response is required.

126.   As a direct and proximate result of MabVax's and the Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchases or acquisition of MabVax stock.

**ANSWER:** Defendants deny the allegations in Paragraph 126, except state that Paragraph 126 states a legal conclusion to which no response is required.

## COUNT III[6]

### Fraudulent Inducement

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-126 above, and further allege:

**ANSWER:** Defendants repeat and incorporate by reference each response set forth above.

127.    This claim is asserted against the Defendants on behalf of Plaintiffs, who each purchased MabVax securities throughout 2017 and 2018.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 127 and Footnote 6 because the Court dismissed Count III with prejudice.

128.    The Defendants made materially false representations to Plaintiffs. The Defendants were top officers and controlling persons of MabVax, and had direct involvement in its day-to-day operations. The material omissions from MabVax's public written and verbal solicitations that were made to Plaintiffs in connection with the investments was the collective action of the Defendants. The Defendants were each involved in drafting, producing, reviewing, and/or disseminating the documents at issue in this action and made materially false verbal representations to the Plaintiffs as well.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 128 because the Court dismissed Count III with prejudice.

129.    Defendants knew that at the time they were inducing Plaintiffs to invest in MabVax that they were omitting material facts that Plaintiffs were entitled to know, that they would want to know, and that would impact Plaintiffs' decision to invest in MabVax.

---

[6] This Fourth Amended Complaint includes Counts III through VI, notwithstanding the Court's dismissal of those claims, for clarity and reference, including with respect to any potential appeal of those dismissals.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 129 because the Court dismissed Count III with prejudice.

130.    Defendants intended that Plaintiffs would rely on Defendants' material misrepresentations and omissions and invest in MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 130 because the Court dismissed Count III with prejudice.

131.    In reliance and as a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the Plaintiffs invested in the above investments. Plaintiffs would not have made their investments and suffered the economic loss associated with making their investment into MabVax had the true information been disclosed. Plaintiffs' reliance upon these statements was reasonable.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 131 because the Court dismissed Count III with prejudice.

132.    As a direct and proximate result of the wrongful conduct of the Defendants, Plaintiffs suffered damages in connection with their investments.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 132 because the Court dismissed Count III with prejudice.

133.    Defendants' misstatements and omissions pertained to the very risk that was concealed by their misrepresentations and omissions. Defendants' misstatements and omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 133 because the Court dismissed Count III with prejudice.

## COUNT IV

### Common Law Fraud

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-133 above, and further allege:

**ANSWER:** Defendants repeat and incorporate by reference each response set forth above.

134.   This claim is asserted against the Defendants on behalf of Plaintiffs, who each purchased MabVax securities throughout 2017 and 2018.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 134 because the Court dismissed Count IV with prejudice.

135.   The Defendants made materially false representations to Plaintiffs. The Defendants were top officers and controlling persons of MabVax, and had direct involvement in its day-to-day operations. The material omissions from MabVax's public written and verbal solicitations that were made to Plaintiffs in connection with the investments was the collective action of the Defendants. The Defendants were each involved in drafting, producing, reviewing, and/or disseminating the documents at issue in this action and made materially false verbal representations to the Plaintiffs as well.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 135 because the Court dismissed Count IV with prejudice.

136.   Defendants knew that at the time they were inducing Plaintiffs to invest in MabVax that they were omitting material facts that Plaintiffs were entitled to know, that they would want to know, and that would impact Plaintiffs' decision to invest in MabVax.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 136 because the Court dismissed Count IV with prejudice.

137.   Defendants   intended   that   Plaintiffs   would   rely   on   Defendants'   material

misrepresentations and omissions and invest in MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 137 because the Court dismissed Count IV with prejudice.

138.    In reliance and as a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the Plaintiffs invested in the above investments. Plaintiffs would not have made their investments and suffered the economic loss associated with making their investment into MabVax had the true information been disclosed. Plaintiffs' reliance upon these statements was reasonable.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 138 because the Court dismissed Count IV with prejudice.

139.    As a direct and proximate result of the wrongful conduct of the Defendants, Plaintiffs suffered damages in connection with their investments.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 139 because the Court dismissed Count IV with prejudice.

140.    Defendants' misstatements and omissions pertained to the very risk that was concealed by their misrepresentations and omissions. Defendants' misstatements and omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 140 because the Court dismissed Count IV with prejudice.

141.    Defendants material misstatements and omissions directly and proximately caused Plaintiffs' economic loss. The very pieces of information that Defendants made misleading statements about or omitted from Plaintiffs were the factors that caused the demise of MabVax

and the Plaintiffs to suffer losses.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 141 because the Court dismissed Count IV with prejudice.

<u>**COUNT V**</u>

**Common Law Negligent Misrepresentation**

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-141 above, and further allege:

**ANSWER:** Defendants repeat and incorporate by reference each response set forth above.

142.    The relationship between Plaintiffs and Defendants constituted a relationship in which Plaintiffs reposed in Defendants deep trust, dependence, confidence, counsel, and reliance such that a fiduciary relationship was established.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 142 because the Court dismissed Count V with prejudice.

143.    Defendants knew that Plaintiffs would and did rely and depend on Defendants representations and judgments with regard to the funds Plaintiffs invested in MabVax and, in so doing, Defendants undertook Plaintiffs' trust and confidence and Defendants, by their words and action, undertook and assumed a duty to advise, counsel and protect Plaintiffs.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 143 because the Court dismissed Count V with prejudice.

144.    Plaintiffs at all times relied upon Defendants' representations, financial judgment and decision-making with regard to MabVax and Plaintiffs' decision to invest in MabVax.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 144 because the Court dismissed Count V with prejudice.

145.    Defendants were all aware of Plaintiffs' reliance, dependence upon, and trust of

them as principals of MabVax.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 145 because the Court dismissed Count V with prejudice.

146.    The Defendants made materially false representations to Plaintiffs. The Defendants were top officers and controlling persons of MabVax, and had direct involvement in its day-to-day operations. The material omissions from MabVax's public written and verbal solicitations that were made to Plaintiffs in connection with the investments was the collective action of the Defendants. The Defendants were each involved in drafting, producing, reviewing, and/or disseminating the documents at issue in this action and made material verbal misrepresentations to the Plaintiffs as well.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 146 because the Court dismissed Count V with prejudice.

147.    In reliance and as a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the Plaintiffs invested in the above investments. Plaintiffs would not have made their investments and suffered the economic loss associated with making their investment into MabVax had the true information been disclosed. Plaintiffs' reliance upon these statements was reasonable.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 147 because the Court dismissed Count V with prejudice.

148.    As a direct and proximate result of the wrongful conduct of the Defendants, Plaintiffs suffered damages in connection with their investments.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 148 because the Court dismissed Count V with prejudice.

149.    Defendants material misstatements and omissions directly and proximately caused Plaintiffs' economic loss. The very pieces of information that Defendants made misleading statements about or omitted from Plaintiffs were the factors that caused the demise of MabVax and the Plaintiffs to suffer losses.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 149 because the Court dismissed Count V with prejudice.

150.    Defendants' misstatements and omissions pertained to the very risk that was concealed by their misrepresentations and omissions. In other words, Defendants' misstatements and omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 150 because the Court dismissed Count V with prejudice.

## COUNT VI

### Tortious Interference with Contract

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-150 above, and further allege:

**ANSWER:** Defendants repeat and incorporate by reference each response set forth above.

151.    The August 8, 2017 Letter Agreement between MabVax and certain Plaintiffs was a valid contract.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 151 because the Court dismissed Count VI with prejudice.

152.    The August 8, 2017 Letter Agreement was willfully and intentionally interfered with by the Defendants. The Defendants, in their capacities as officers of MabVax, forced MabVax to breach that agreement.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 152 because the Court dismissed Count VI with prejudice.

153. Even though the August 8, 2017 Letter Agreement obligated MabVax to reduce the employment terms of management and to defer portions of their salaries, the Defendants, while in control of MabVax, did not allow MabVax to do either.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 153 because the Court dismissed Count VI with prejudice.

154. The Defendants did not allow MabVax to reduce their salaries or employment terms because that was in their interest and part of their scheme to extract exorbitant compensation from MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 154 because the Court dismissed Count VI with prejudice.

155. Due to the Defendants' intentional interference, Plaintiffs did not receive the benefit of their bargain and were thereby damaged.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 155 because the Court dismissed Count VI with prejudice.

<u>**DEFENSES**</u>

By setting forth these defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs. Nothing stated herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to Plaintiffs' allegations. Defendants may have additional, but currently unidentified, defenses available. Defendants reserve the right to assert additional defenses that are revealed by further investigation and discovery.

**FIRST DEFENSE**

1.      The Fourth Amended Complaint ("Complaint") fails to state a claim upon which relief can be granted against Defendants, in whole or in part.

**SECOND DEFENSE**

2.      The Complaint fails to identify any material undisclosed information or any misstatement of material fact.

**THIRD DEFENSE**

3.      Plaintiffs' claims are barred, in whole or in part, because any damages they allege to have sustained were caused by the acts and/or omissions of persons other than the Defendants and over whom the Defendants had no control.

**FOURTH DEFENSE**

4.      Plaintiffs' claims against the Defendants are barred in whole or in part by their own actions, or omissions.

**FIFTH DEFENSE**

5.      Plaintiffs have failed to plead their claims against Defendants with particularity.

**SIXTH DEFENSE**

6.      Defendants are not liable to Plaintiffs because Defendants did not make any false or misleading statements of material fact or omissions of material fact, Defendants bespoke caution about the risks of investing in MabVax, and Defendants are not responsible in law or fact for any alleged false or misleading statement or omission of material fact by others.

**SEVENTH DEFENSE**

7.     Defendants are not liable to Plaintiffs because any alleged misstatements by Defendants were forward-looking statements and/or contained sufficient cautionary language and risk disclosure.

**EIGHTH DEFENSE**

8.     Defendants are not liable to Plaintiffs because they had no duty to disclose any facts allegedly not disclosed.

**NINTH DEFENSE**

9.     Defendants are not liable to Plaintiffs because any alleged misrepresentations or omissions for which the Defendants are allegedly responsible were not material.

**TENTH DEFENSE**

10.     Defendants are not liable to Plaintiffs because Plaintiffs' alleged losses were not actually or proximately caused by the Defendants.

**ELEVENTH DEFENSE**

11.     Plaintiffs' claims are barred in whole or in part by laches, equitable estoppel, waiver, and/or other related equitable doctrines.

**TWELFTH DEFENSE**

12.     Plaintiffs' claims are barred because they did not allege actual, direct, or individual reliance upon any statements allegedly made by Defendants.

**THIRTEENTH DEFENSE**

13.     Neither Defendant is liable for any statement not made by him.

**FOURTEENTH DEFENSE**

14.     Plaintiffs would be unjustly enriched if allowed to recover on the Complaint.

## FIFTEENTH DEFENSE

15.     The claims alleged in the Complaint are barred, in whole or in part, by the applicable statute of limitations.

## SIXTEENTH DEFENSE

16.     Plaintiffs are not entitled to the relief sought by virtue of their own unclean hands.

## SEVENTEENTH DEFENSE

17.     Defendants acted at all times in good faith and had no knowledge, and were not reckless in not knowing, that any alleged statement or omission was false or misleading.

## RESERVATION OF RIGHTS

18.     Defendants reserve the right to assert additional defenses that may present themselves during these proceedings and hereby reserve the right to amend their Answer to assert any such defenses.

Respectfully submitted,

Dated:  May 25, 2022                              COOLEY LLP

                                                 /s/  Andrew D. Goldstein
                                                 Andrew D. Goldstein (agoldstein@cooley.com)
                                                 Peter M. Adams *(pro hac vice)*
                                                 Linh K. Nguyen *(pro hac vice)*
                                                 Heather M. Speers *(pro hac vice)*
                                                 4401 Eastgate Mall
                                                 San Diego, California 92121
                                                 Telephone: (858) 550-6000
                                                 Email: kfukumura@cooley.com
                                                 Email: padams@cooley.com
                                                 Email: lknguyen@cooley.com
                                                 Email: hspeers@cooley.com

                                                 Ian Shapiro (4002408)
                                                 Brian M. French (5262498)
                                                 55 Hudson Yards, 44th Floor
                                                 New York, New York 10001
                                                 Telephone: (212) 479-6374
                                                 Email: ishapiro@cooley.com
                                                 Email: bfrench@cooley.com

                                                 Andrew D. Goldstein (4585675)
                                                 1299 Pennsylvania Avenue, NW Suite 700
                                                 Washington, DC 20004-2400
                                                 Telephone: (202) 842-7805
                                                 Email: agoldstein@cooley.com

                                                 *Attorneys for Defendants John David Hansen
                                                 and Gregory P. Hanson*